538 So.2d 1063 (1989)
STATE of Louisiana
v.
Marcus DICKERSON.
No. KA 9236.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1989.
*1065 Harry F. Connick, Dist. Atty., Brian T. Treacy, Asst. Dist. Atty., New Orleans, for State.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for Dickerson.
Before BARRY, CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Defendant, Marcus Dickerson, was found guilty by a twelve-person jury of possession with intent to distribute heroin, a violation of La.R.S. 40:966. He was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals raising five assignments of error.
On June 4, 1986, at approximately 12:30 p.m., police officers Wethern, Farve, and Clark set up a surveillance of 2538 Conti Street, Apartment 2. They had received a tip from a confidential informant who had recently purchased heroin there from a tall, slim, light-complected black male known as Marcus. These officers were later joined by Officers Foutunato and Rice. The officers positioned themselves at different locations near the apartment. One or more of the officers observed an unknown male walk up to the apartment in question at 12:45 p.m. He knocked on the door, was admitted into the apartment, and left a short time later. He was not stopped by any of the officers.
At approximately 1:10 p.m. the officers observed the defendant leave the apartment and walk to a nearby public telephone. After making a telephone call he walked back to 2538 Conti Street where he met an unknown male who had gotten out of a nearby parked automobile. The two men went into Apartment 2. Five or ten minutes later the unknown male left the apartment, entered the parked vehicle, and drove away. He was not stopped by any of the officers.
At 1:30 p.m. the defendant left the apartment and began walking down Conti Street towards N. Galvez Street. As he left the apartment it appeared that he placed something in either his waistband or trouser pocket. At N. Galvez Street defendant flagged down a passing vehicle and got in the rear seat. The car was occupied by an unknown male and female. Officers in more than one vehicle followed the automobile. Officer Farve testified that it was his *1066 opinion that the defendant noticed the officers and began making gestures to direct the driver on where to turn. Officer Farve also saw the defendant making a motion as if he were placing something on the side of the rear seat. The officers then decided to pull the car over. The occupants were ordered out of the car and Officer Farve retrieved five glassine envelopes of a substance later identified as heroin from the space between the side of the rear seat and the door. Apparently all three persons were placed under arrest at that time. A search of defendant's person uncovered $380.00 in cash. Officer Farve advised defendant of his rights as an arrestee and defendant stated that he understood them. He then stated that the five envelopes of heroin were his and that the other two persons had nothing to do with the drugs.
Officer Wethern had left the site of the surveillance before 1:00 p.m. He maintained radio contact with the other officers and went back to his office to prepare an affidavit to secure a search warrant. His affidavit incorporated information relayed to him by the other officers. After his arrest defendant was transported to the narcotics office where the officers informed him that they were in the process of securing a search warrant for his apartment. The officers brought the defendant with them when they went to execute the search warrant which had been issued to Officer Wethern by a magistrate. The defendant was given a copy of the warrant and he allowed officers into the apartment with a key. Defendant led the officers to a dresser where, in two separate drawers, respectively, they discovered five and twenty-five glassine envelopes of heroin. Also recovered was a .38 caliber revolver and two hypodermic syringes. Officers found a rent receipt showing that the defendant had paid the rent for 2538 Conti Street, Apartment 2. Also found was a utility services receipt naming the defendant as the resident of the apartment. One officer testified that the apartment was very small, with perhaps 150 to 200 square feet total living area. It consisted of one room, a bathroom, and a small kitchen area.
After returning to the narcotics office the defendant told Officer Robert McNeil that he obtained approximately four "bundles" or one hundred dosage units of heroin per day and sold the drugs to support his own drug habit. Officer McNeil characterized the defendant as being "quite candid" with respect to his involvement in drug trafficking.
Evidence established that the substances contained in the glassine envelopes seized from the automobile and apartment were heroin. Officer Farve testified that based upon his experience the unknown males who visited defendant's apartment for short periods of time made drug transactions. It was stipulated that Officer Farve was an expert in the field of narcotics. He stated that "track" (needle) marks on a person's arms indicated that he is a narcotics user. He admitted having observed track marks on the defendant's arms. It was his expert opinion that "most of the time" heroin users are also sellers but admitted that some heroin users do not sell heroin. He also stated that drug sellers are usually in possession of money.
Officer McNeil testified that he had been working fourteen years in the narcotics section of the New Orleans Police Department. The trial court recognized Officer McNeil as an expert in the packaging and distribution of heroin. He testified that the heroin seized from the defendant was more consistent with someone involved in heroin "marketing for profit" as opposed to someone who just used the drug. This opinion was based on the amount of heroin involved. He also testified that most addicts who don't sell drugs do not stock-pile heroin in these amounts. In his fourteen years as a narcotics officer he had never encountered a non-seller addict in possession of thirty bags (envelopes-dosages) of heroin.
Based upon this evidence the jury found the defendant guilty of possession of heroin with intent to distribute.

Assignment of Error No. 1
Defendant first contends that the trial court erred in denying his motion for a *1067 mistrial based on the State's impermissible references in its opening statement to the information received from the informant and to the defendant's inculpatory statements.
In his opening statement the prosecutor said: "The date was June 4, 1986. The officers received a tip from a confidential informant." At this point the defense objected and later made a motion for a mistrial. Counsel for defendant argued that in making the statement the prosecutor was alluding to inadmissible hearsay evidence. The trial court denied defendant's motion, finding that the reference to the tip from the confidential informant, without repeating anything that the informant stated, was permissible to set out that part of the State's case which would show why the officers set up the surveillance of defendant's apartment. Officer Farve later testified to this fact.
"Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." C. McCormick, Evidence, § 246 (Cleary ed. 1972); State v. Shoemaker, 500 So.2d 385 (La.1987); State v. Martin, 356 So.2d 1370 (La.1978).
We find no error in the trial court's denial of defendant's motion for a mistrial in this instance. There was no testimony or recitation by the prosecutor of an out of court statement, only a reference to one. The reference to the statement was made to inform the jury that evidence would be presented to show why the surveillance of defendant's residence was initiated. Such evidence is admissible to show why an officer took a particular course of action and it is not considered hearsay. State v. Ford, 489 So.2d 1250 (La.1986); State v. Smith, 400 So.2d 587 (La.1981).
Defendant also claims that in its opening statement the State improperly referred to his inculpatory statement made to police officers after his arrest. During his opening statement the prosecutor stated: "... and you'll hear that back at headquarters the defendant made some statements to the police, and I can't tell you what he said, but you will hear that during the course of the trial," and, "You will also hear that the defendant made some statements to the police officers." Defendant's motion for a mistrial based upon La.C.Cr.P. art. 767 was denied by the trial court. The court ruled that the vague reference to a statement made by defendant, not identified as inculpatory or a confession, was not prejudicial. This, because in a motion to suppress hearing held four months before the trial, the court had ruled that the statement/confession was admissible. Therefore, the defendant was not surprised or prejudiced by the State's reference to the statement.
La.C.Cr.P. art. 767 provides:
"The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant."
The purpose of the scheme of La.C.Cr.P. arts. 766-768, however, is to prevent surprise and allow adequate time for preparation of the defense, as well as to avoid certain problems that had been attendant to the mentioning of confessions or inculptory statements in the State's opening statement. State v. Parker, 436 So.2d 495 (La.1983); State v. Russell, 416 So.2d 1283 (La.1982), cert. denied, 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982).
As previously mentioned the defendant's motion to suppress the statement was denied four months before trial. The defendant had known of the statement at least since the State filed responses to discovery requests on August 15, 1986, over five months before trial. The defendant had ample time to prepare to defend against the introduction of any inculpatory statement and he could not have been surprised to learn it was going to be introduced at trial. Since the statements were subsequently introduced at trial through the testimony of police officers we fail to see how defendant was in any way prejudiced by the prosecutor's reference to a statement made by the defendant. We find no error *1068 by the trial court in denying defendant's motion for a mistrial.

Assignment of Error No. 2
Defendant next claims that the trial court erred in denying his motion for a mistrial based on the State's failure to provide notice of its intention to use the defendant's statement prior to the opening statements.
La.C.Cr.P. art. 768 provides:
"Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence." (emphasis ours)
The mandate and prohibition of La.C. Cr.P. art. 768 are operative where the defendant has not been granted pretrial discovery. In the case at bar the State set forth the substance of the inculpatory statements over five months before trial, in response to defendant's discovery requests. Therefore, the State was not required to advise the defendant in writing prior to its opening statement of its intention to introduce the statements in evidence. The defendant raises no other assignments of error specifically relating to the statements.

Assignment of Error No. 3
Defendant next argues that the trial court erred in denying his motion to suppress the evidence (heroin) seized from the automobile stop and the search of his apartment, and the statements/confessions given to police officers after his arrest.
We first examine the seizure of heroin from the automobile in which the defendant was riding. We find that evidence supports the view that the police officers made a valid warrantless search of the automobile and the heroin was lawfully seized.
We begin with the basic premise that a search by law enforcement officers conducted without a warrant is per se unreasonable and therefore in violation of the Fourth Amendment to the U.S. Constitution and La. Const. Art. 1, § 5, unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Tatum, 466 So.2d 29 (La.1985); State v. Raheem, 464 So.2d 293 (La.1985); State v. Helwig, 489 So.2d 296 (La.App. 4th Cir.1986), writ denied, 495 So.2d 301 (La. 1986).
There is a well-recognized exception to the search warrant requirement where police officers have probable cause to believe an automobile contains contraband. This exception is premised on the impracticability of obtaining and executing a search warrant when the automobile may be quickly moved out of the locality or jurisdiction in which the warrant must be sought. Under such "exigent circumstances" a search of an automobile without a warrant is not unreasonable if based on facts that would have justified the issuance of a search warrant. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); State v. Tatum, supra.
To determine if the officers had probable cause to believe that the automobile in which the defendant was riding contained contraband we will examine the facts known by the officers as recited in the affidavit made by Officer Wethern to secure the search warrant for defendant's apartment. We will also consider other observations made by officers. If, given all the facts and circumstances known by the officers, it can be said that there was a "fair probability" that contraband was located in the automobile, probable cause existed to stop and search it. See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
The search warrant affidavit recited:
"The facts and reasons for the requests of this search warrant are:
"On Wednesday, June 4th 1986, Narcotics Officers spoke with a confidential informant whose reliability has been demonstrated through arrests that resulted from past contributions. On this *1069 occasion, the informant stated that he/she had occassion [sic], within the past three days, to go to 2538 Conti Street apartment 2 for the express purpose of purchasing Heroin in retail quantities. The innominate stated that he/she purchased the Heroin (at $25.00 per "bag") from a negro male known as "Slim" or "Marcus". The informant described "Marcus" as being approximately 6'1" tall and weighing about 150 pounds. The subject was light complected and sported a short "Afro" hairstyle and a thin mustache. His residence was described as a single story concrete block apartment house yellow in color.
"In response to the information received, the Officers initiated a surveillance of 2538 Conti Street, apartment # 2. The Officers were assisted in this endeavour by Officer Lloyd Clark, Officer Guy Fortunato, and Officer John Rice.
"At about 12:45 p.m., Officer Clark observed a negro male, clad in a blue "T-shirt" light colored shorts and a dark blue baseball hat approach the apartment on foot. The subject knocked at the door and entered. Within a few minutes, the subject exited and walked away in a downtown direction on N. Dorgenois Street. Officer Wethern observed the approach and departure of this subject but was unable to see the front door of the apartment.
"At about 1:10 p.m., Officers Clark, Fortunato and Rice observed a tall slim light complected negro male exit the apartment. The Officers noted that the subject closely matched the description supplied by the informant. The subject was observed going to a pay telephone where he made a call.
"At about 1:25 p.m., the Officers observed the subject return to the apartment. He was met infront [sic] of the residence by a negro male attired in a tan shirt and blue shorts. The pair spoke briefly and entered the apartment. At about 1:27, the subject in the tan shirt exited the apartment, looked about the area and entered the passenger side of a blue car which was parked in front of the apartment building. The driver of that vehicle had remained in the car during this activity. The subjects then drove away.
"At about 1:35p.m., the Officers observed the subject exit the residence. The Officers noted that as he walked away from the apartment, he appeared to be putting something into the area of his right front pants pocket or waist band. The subject walked to the intersection of North Galvez and Conti Streets where he entered a 1986 Ford Thunderbird. The Officers had occassion to stop that vehicle at about 1:45 p.m. and subsequently arrested the subject for possession of Heroin. The subject was identified as Marcus Dickerson N/M 7-10-52.
"Based on the information received, the surveillance conducted and the arrests effected, it is the affiant's belief that controlled dangerous substances, more particularly Heroin are being secreted within and distributed out of apartment 2 at 2538 Conti Street and he respectfully requests that a search warrant be issued for that residence."
Compare the facts known by the police officers in United States v. Ross, supra, in which an extensive automobile search conducted without a warrant was held by the U.S. Supreme court to have been reasonable and not violative of the Fourth Amendment. In Ross a reliable informant told the officers that an individual known as "Bandit" was selling drugs kept in the trunk of an automobile parked at a certain location. The informant gave the officers a description of "Bandit" and the vehicle, and also stated that he had just observed the suspect complete a sale. The officers drove to the location, observed the automobile and ran a license registration check which showed the owner's alias as "Bandit." An individual matching "Bandit's" description attempted to drive away in the vehicle and the officers stopped it. A search of the trunk revealed a brown paper bag containing a number of glassine envelopes of heroin.
*1070 The information received by the officers from the informant in the case at bar was similar to that received by the officers in Ross, supra. The main difference is that in the case at bar the information was that the drugs were being sold from the suspect's residence. Defendant questions the reliability of the confidential informant, pointing out that his track record consisted of information given to police officers which resulted in only two previous drug arrests. The track record of the informant is only one factor for a magistrate to consider when examining the "totality of the circumstances" to determine whether probable cause exists. Illinois v. Gates, supra. The fact that this informant's tips had resulted in two previous drug arrests gives his information some indicia of reliability, though admittedly not as much as it would have had there been ten arrests and ten convictions. But, in the case at bar the information was first-hand; the informant personally bought heroin from the defendant at the address in question. By giving this information he was also making an admission against penal interest, a factor recognized as sometimes indicative of a measure of reliability. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); State v. Mosley, 412 So.2d 527 (La.1982); State v. Mena, 344 So.2d 357 (La.1976). We do not find the short track record of the informant fatal either to the question of his reliability or the issue of whether probable cause existed.
As in Ross, supra the officers here partially corroborated the tips by observing that the defendant's appearance closely matched the description supplied by the informant. In addition, they observed in two separate instances, individuals who, based on the officers' experience, visited the defendant's apartment to purchase narcotics. These shortfive to ten minutes visits by the unknown persons were a factor to be considered in determining whether probable cause existed to believe that contraband was in the apartment. See State v. Ditcharo, 441 So.2d 326 (La.App. 5th Cir.1983); State v. Barber, 445 So.2d 463 (La.App. 4th Cir.1984).
The officers then observed the defendant apparently place something inside of his waistband or trouser pocket as he left the apartment. After flagging down and then entering the rear seat of a passing automobile, the defendant rode off with the police officers tailing him. At this point we do not believe the officers had probable cause to believe the vehicle contained contraband. But the defendant apparently noticed the officers following the vehicle. He began gesturing as if to direct the driver and was observed by the officers making movements as if he were secreting something on the side of the rear passenger seat. At this point we believe that, considering all of the information possessed by the officers, they had probable cause to believe that defendant had secreted contraband in the vehicle. Taking a practical and commonsense approach, the experienced narcotics officers had a "substantial basis" to conclude that there was probable cause that the vehicle contained contraband. See Illinois v. Gates, supra.
After stopping the vehicle Officer Farve reached into the space in between the rear seat and door panel and recovered five glassine envelopes containing heroin. After being arrested and advised of his rights, which he understood, defendant made an inculpatory statement which was properly introduced at trial.
We now examine the information contained within the four corners of Officer Wethern's affidavit to determine whether probable cause existed for the magistrate to issue a search warrant for defendant's apartment. Our duty as a reviewing court is simply to insure that the magistrate had a "substantial basis" for concluding that probable cause existed. See Illinois v. Gates, supra; State v. Manso, 449 So.2d 480 (La.1984).
In addition to the information received from the reliable informant, and the activity observed by the officers at defendant's apartment, the magistrate also considered that the occupant of the apartment where heroin was allegedly located, had just been arrested for possession of heroin. Considering *1071 all of this information we find that the magistrate had a "substantial basis" for concluding that probable cause existed to believe heroin was located at 2538 Conti Street, Apartment 2. The search warrant was properly issued and the thirty envelopes of heroin lawfully seized from defendant. The additional statement by defendant made after the search of his apartment, that he obtained one hundred envelopes of heroin a day and sold the heroin to support his drug habit, was properly admitted at trial.
We find no merit to any of defendant's arguments that either of the searches and seizures were unreasonable and in violation of his constitutional rights under the Fourth Amendment to the U.S. Constitution or Louisiana Constitution Article 1, § 5.

Assignment of Error No. 4
Defendant next contends that the evidence was insufficient to convict him of possession with intent to distribute heroin.
The State had the burden of proving beyond a reasonable doubt that defendant (1) possessed heroin, and (2) while so possessing, had the specific intent to distribute it. La.R.S. 40:966(A)(2). Defendant admitted to police officers that the five envelopes of heroin found in the vehicle belonged to him. He also directed officers to the thirty envelopes of heroin in his apartment. He admitted to possessing the heroin with the intent to distribute it. That is, he informed officers that he obtained large quantities of heroin and sold it to support his habit.
Aside from defendant's admission of possession of heroin, with intent to distribute, constructive possession of the heroin found at his apartment may be established by showing that he had dominion and control over the drugs. State v. Edwards, 354 So.2d 1322 (La.1978). Circumstantial evidence is sufficient to establish this element of the offense. Specific intent to distribute may likewise be established by proving circumstances surrounding defendant's possession which give rise to a reasonable inference of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1982); State v. Howard, 449 So.2d 69 (La.App. 4th Cir.1984).
When circumstantial evidence forms the basis of proof, the facts inferred from it are assumed as true and those facts must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. This rule of circumstantial evidence, however, does not establish a separate standard of appellate review. State v. Chism, 436 So.2d 464 (La.1983). When assessing the sufficiency of the evidence to support a conviction, an appellate court must determine whether, viewing the evidence as a whole in a light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 400 So.2d 1370 (La.1981).
The defendant was observed by police officers coming out of and going into 2538 Conti Street, Apartment 2. He accepted a copy of the search warrant for the apartment. He allowed the officers into the apartment with a key in his possession. He directed the officers to the heroin in his dresser drawers. A rent receipt found in the apartment showed that defendant paid the rent for 2538 Conti Street, Apartment 2, and a utility bill for that apartment had his name on it. The apartment was extremely small and there was no evidence that anyone else resided there. All of these circumstances tend to prove that the defendant lived in the apartment and that he had dominion and control over the heroin. These assumptions exclude every reasonable hypothesis of innocence, at least insofar as possession is concerned.
We now examine the issue of specific intent to distribute. Officer Robert McNeil was qualified by the court as an expert in the packing and distribution of controlled dangerous substances. Commenting on the brief visits to the defendant's apartment by the two unknown males, Officer McNeil stated that it was "absolutely characteristic" that purchasers of illegal drugs only stay briefly at places where they purchase *1072 drugs. He also testified that the quantity of heroin found in defendant's apartment was more consistent with someone involved in he distribution of heroin as opposed to just an addict. According to Officer McNeil most heroin addicts do not stockpile heroin in these amounts and will consume whatever they can afford. In his fourteen years as a narcotics officer he had never encountered a non-distributor/seller addict who had thirty envelopes of heroin. But he also admitted that an addict could consume from one to five envelopes of heroin per day.
It was stipulated that Officer Farve was an expert in narcotics. He admitted that it would not be unusual for a heroin addict to consume thirty envelopes of heroin in three weeks. He also stated that most but not all heroin users are sellers and that most heroin distributors are in possession of money. When the defendant was arrested after the automobile stop he had $380.00 in cash on his person. Along with the heroin found in his apartment police seized a .38 caliber revolver. But they also found two hypodermic syringes and at the time of his arrest the defendant had "track marks" on his arms. These were indications that he was a drug addict.
The circumstantial evidence tends to prove that even though he was a heroin addict, the defendant possessed heroin with the intent to distribute it. Assuming this fact as true it necessarily excludes the only reasonable hypothesis of innocencethat he possessed the heroin for his own consumption.
Defendant places a great deal of emphasis on the fact that no packaging paraphernalia or scales suggestive of a distribution operation were found in his apartment. We find no merit to this argument since the defendant admitted that he obtained heroin to sell which was already packaged for resale in individual dosage envelopes. There was no need for him to weigh, measure, or package any of the heroin.
We find that, viewing all of the evidence, the circumstantial as well as the defendant's confession(s), in a light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime of possession of heroin with intent to distribute.

Assignment of Error No. 5.
Defendant lastly argues that the trial court erred in sentencing him to life imprisonment at hard labor without benefit of parole. Defendant is correct. La.R.S. 40:966 prescribes the mandatory sentence for possession with intent to distribute heroin as life imprisonment at hard labor without benefit of probation or suspension of sentence. There is no provision stipulating that a defendant serving the sentence be denied the possibility of parole.
Our review of the record reveals an error patent. The defendant was convicted on January 28, 1987. He was sentenced on January 30, 1987, two days later. La.C.Cr.P. art. 873 provides in pertinent part: "If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence ... If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately." This three day mandatory delay is to allow a defendant sufficient time to file a motion for a new trial, which must be filed between verdict and sentence. Comment (a) to La.C.Cr.P. art. 872. If the defendant does not waive delay, a sentence imposed within the three day period is void. Comment (c) to La.C.Cr.P. art. 873. State v. Taylor, 349 So.2d 1245 (La.1977); State v. Johnson, 275 So.2d 405 (La.1973). There is no indication that the defendant expressly waived the delay provided and therefore we must remand the case for resentencing. This will also allow the trial court to impose the proper sentence provided by La. R.S. 40:966, without denying the defendant the possibility of parole.
For the foregoing reasons we affirm the conviction of the defendant, vacate the sentence imposed, and remand the case to the trial court for resentencing consistent with the views expressed herein.
*1073 CONVICTION AFFIRMED, SENTENCE VACATED, REMANDED FOR RESENTENCING
CIACCIO, J., concurs.
CIACCIO, Judge, concurring.
I concur in the result.