MAX N. TOBIAS, JR., Judge.
LOn 29 July 2008, the state filed a billed of information charging the defendant, Thaddeus Frith (“Frith”), with possession with intent to distribute heroin. Frith pled not guilty at his 6 August 2008 arraignment. Defense motions were heard on 30 April 2009 whereat the trial court found probable cause and denied Frith’s motion to suppress the evidence.
The matter proceeded to trial on 19 May 2010. The jury found Frith guilty as charged. Thereafter, the state filed a multiple bill, and the defendant filed a motion for new trial alleging that the verdict was contrary to the evidence and a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. On 27 August 2010, the trial court denied defendant’s motion for new trial and motion for post-verdict judgment. On 24 September 2010, the trial court sentenced the defendant to thirty-three years and four months at hard labor. A multiple bill hearing was conducted, and Frith was found to be a multiple offender. The trial court vacated the defendant’s sentence and again sentenced him to thirty-three years and four months at hard labor. Frith filed a motion to reconsider sentence that was last scheduled to be heard on 11 February 2011; the record on appeal reflects no ruling on the motion. This appeal followed.
^Detective Dean Moore testified that on 8 July 2008, he and his partner, Detective Chad Perez, began a narcotics investigation in the 2600 block of Jackson Avenue, near its intersection with Magnolia Street, in New Orleans.
Detective Moore established a surveillance position near the middle of the block while Detective Perez remained in a patrol vehicle nearby. In order to maintain the integrity of future narcotics investigations, Detective Moore did not divulge the exact location from which he conducted his surveillance.
After beginning his surveillance, Detective Moore observed the defendant in the middle of the block, where he remained for approximately five minutes before Detective Moore observed an unknown black male wearing a red T-shirt approach the defendant from the direction of St. Charles Avenue. The two met in the middle of the block, and a short conversation ensued. The unknown male then reached into his right rear pants pocket and retrieved an unknown amount of paper currency that he handed to the defendant.
The defendant then turned around and walked back towards an abandoned structure located at 2622 Jackson Avenue. Detective Moore testified that one could clearly tell that the structure was abandoned because a piece of plywood covered the front door.
The defendant walked up to the alleyway adjacent to the structure and glanced both ways along Jackson Avenue before proceeding into the alleyway. He walked past the first foundation pier, knelt down, and quickly picked up an unknown object from underneath the house with his left hand. He rose and placed the object in his right hand which he kept in a tight fist.
By this time, the unknown subject in the red T-shirt had relocated to the corner of Jackson and Magnolia where a small grocery store is located. A pay|sphone on the side of the store was present where the unknown subject was standing. After exiting the alleyway, the defendant walked towards the unknown subject. As the defendant reached the subject, he glanced up and down Jackson Avenue before quickly passing the object in his right hand to the *68 unknown subject. After accepting the object, the unknown subject immediately separated from the defendant, walking along Jackson Avenue back towards St. Charles Avenue and then to an unknown location.
Detective Moore explained that they did not stop the unknown subject for two reasons. First, he and his partner had only one vehicle between them. Second, because he was convinced that he had just observed a hand-to-hand narcotics transaction, his attention was fixated on the defendant rather than the buyer.
Not wanting to jeopardize any future investigations in the area, Detective Moore waited at his location until an opportunity presented itself to extricate himself from his surveillance location. Approximately five minutes after witnessing the apparent transaction, the defendant turned up Magnolia Street and walked out of Detective Moore’s line of sight.
Detective Moore then radioed his partner to relocate to his position to pick him up. Detective Perez arrived soon thereafter in his marked police unit. The two proceeded up Magnolia Street, where Detective Moore observed the defendant standing in a group of four or five subjects just a few houses away from the intersection.
The detectives exited the vehicle, identified themselves, and directed the defendant to the vehicle, where he was advised he was under investigation for a possible narcotics violation. Detective Moore apprised the defendant of his Miranda rights at that time.
I/The officers immediately returned to the abandoned structure at 2622 Jackson Avenue. Officer Moore explained that based on previous observations, he believed that the defendant had concealed a stash of narcotics in the alleyway in order to avoid being found in possession of narcotics in the event he encountered the police.
Once at 2622 Jackson Avenue, Officer Moore proceeded down the alleyway and behind the first pier where he had observed the defendant kneeling down, he observed a clear plastic bag. A closer inspection of the bag revealed that it contained twenty clear plastic capsules containing an off-white powder substance that he recognized to be heroin. Detective Moore collected the capsules as evidence and subsequently secured them at Central Evidence and Property.
The defendant was then placed under arrest for possession with intent to distribute a controlled dangerous substance and re-advised of his Miranda rights. In a search incident to arrest, Detective Moore recovered $209.00 in U.S. currency in the defendant’s right front pants pocket.
At trial, Detective Moore identified the drugs he recovered at the scene and the money he recovered from the defendant, both of which were admitted into evidence. Detective Moore also identified several photographs that he took at the scene depicting the abandoned structure, the adjacent alleyway, and the area between the first pier and second pier where the drugs were recovered.
Before resting, the state introduced a crime lab report form the St. Tammany Parish Sheriffs office which reflected that the substance by recovered Detective Moore tested positive for heroin.
| ¿ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENTS OF ERROR NUMBERS 1-3

In Frith’s first three assignments of error, he contends in seriatim that: (1) the verdict was contrary to the law and evi *69 dence; (2) the trial court erred in the denial of his motion for post-verdict judgment of acquittal; and (3) the trial court erred in denying his motion for new trial.
As to Frith’s third assignment of error, the record reflects that Frith’s motion for new trial alleged that the verdict was contrary to the law and evidence. However, the denial of a motion for new trial based upon La.C.Cr.P. art. 851(1) alleging that the verdict is contrary to the law and the evidence is not subject to review on appeal. State v. Guillory, 10-1231, p. 3 (La.10/8/10), 45 So.3d 612, 614-615; State v. Snyder, 98-1078, p. 37, n. 21 (La.4/14/99), 750 So.2d 832, 859, cert. granted, judgment vacated on other grounds, Snyder v. Louisiana, 545 U.S. 1137, 125 S.Ct. 2956, 162 L.Ed.2d 884 (2005); State v. Sparkman, 08-0472, p. 5 (La.App. 4 Cir. 1/28/09), 5 So.3d 891, 894.
With respect to the remaining two assignments of error, together they raise the issue of the sufficiency of the evidence presented at trial.[1] Frith presents but one argument spanning the two assignments of error.
Evidence is deemed to be sufficient when, after viewing the evidence in the light most favorable to the prosecution, it is determined that any rational trier of |fifact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317-320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132, 1134.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This statutory test works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
In order to obtain a conviction, the state must prove the elements of the crime charged beyond a reasonable doubt. To support the conviction for possession with intent to distribute heroin, the state must prove the defendant “knowingly” and “intentionally” possessed the drug with the “intent to distribute.” State v. Williams, 594 So.2d 476, 478 (La.App. 4th Cir.1992).
It is not necessary that the state prove that the defendant had actual physical possession of the narcotics; proof of constructive possession is sufficient to support a conviction. State v. Trahan, 425 So.2d 1222, 1225 (La.1983); State v. Dickerson, 538 So.2d 1063, 1071 (La.App. 4th Cir.1989). Neither the mere presence of the defendant in an area where drugs have been found nor the mere fact that he knows the person in actual possession is sufficient to prove constructive possession. State v. Bell, 566 So.2d 959, 959-960 (La.1990). Nevertheless, a person found in the area of contraband is considered in | yconstructive possession if it is subject to his dominion and control. See Trahan, supra. The elements of knowledge and intent are states of mind which need not be proved as facts, but which may be inferred from the circumstances. State v. Reaux, 539 So.2d 105, 108 (La.App. 4th *70 Cir.1989). The factfinder may draw reasonable inferences to support these contentions based on the evidence presented. Id.
The second element of the statute, specific intent to distribute, may be established by proving circumstances surrounding the defendant’s possession which give rise to a reasonable inference of intent to distribute. Dickerson, supra. The factual circumstances from which such intent can be inferred include: previous distribution by the defendant; the presence of paraphernalia for distribution; the possession of an amount sufficient to create a presumption of intent to distribute; and, packaging in a form usually associated with distribution rather than personal use. State v. Hechavarria, 575 So.2d 444, 448 (La.App. 4th Cir.1991).
Frith contends that the evidence was insufficient to establish either that he possessed the heroin in question or that he did so with the requisite intent to distribute the drug.
With respect to the element of possession, Frith essentially contends that because the heroin was not recovered on his person, the evidence was insufficient to establish his possession of the drug. He notes that his presence a block or more away from where the heroin was discovered at the time of arrest suggests that he had no possessory interest in the heroin. He adds that his mere presence in the vicinity of 2622 Jackson Avenue was insufficient to establish his guilt beyond a reasonable doubt.
| Although Frith was not found in possession of the heroin at the time of his arrest, viewed in the light most favorable to the state, the evidence presented at trial was sufficient to establish his guilt beyond a reasonable doubt.
The testimony established that after receiving the unknown amount of paper currency from the subject clad in a red t-shirt, Frith entered the alleyway adjacent to the abandoned structure located at 2622 Jackson Avenue and knelt down behind the first foundation pier of the raised structure.
There, Detective Moore observed Frith reach down and pick up an object with his left hand. Frith was then seen exiting the alleyway and proceeding directly to the unknown subject’s location across the street where he passed an object from his clenched fist to the unknown subject. The subject immediately left the area.
When Detective Moore inspected the area behind the first foundation pier where the defendant was seen kneeling down and picking up a small object, the officer discovered a clear plastic bag containing twenty capsules of heroin.
A reasonable juror viewing this evidence in the light most favorable to the state could have concluded that Frith retrieved one or more capsules of heroin from the bag behind the pillar and that he therefore exercised dominion and control over the bag. Accordingly, sufficient evidence was presented for a reasonable juror to conclude that the state established the element of possession beyond a reasonable doubt.
In support of his argument that the evidence was insufficient to establish that he possessed the heroin with intent to distribute, Frith asserts that because the police did not stop the purported buyer, the evidence failed to establish an actual sale. He also suggests that the heroin that was recovered was not packaged in a Inform consistent with retail'distribution to others and also suggests that the amount of money recovered was relatively small and that no paraphernalia was recovered.
*71 From the facts of the case, as discussed above, a reasonable juror could have concluded beyond a reasonable doubt that Frith received currency from the unknown subject in exchange for one or more capsules of heroin, which the defendant retrieved from the clear plastic bag discovered behind the foundation pier. Accordingly, the conclusion that Frith possessed the heroin with intent to distribute was a reasonable one.
Frith’s first three assignments of error lack merit. The verdict was fully supported by the evidence.

ASSIGNMENT OF ERROR NO. 4

In his fourth and final assignment of error, Frith contends that the verdict should be overturned on the basis that in light of new facts, Officer Moore’s testimony should not be seen as credible. Specifically, he states that following the trial, or possibly before the trial, Officer Moore was indicted by the federal government for the crimes of falsifying a police report and lying to the F.B.I. Nothing in the record on appeal relates to these allegations. Thus, the issue cannot presently be considered.[2] See State v. Sylvester, 10-1021 (La.App. 4 Cir. 3/30/11), 63 So.3d 288.

^CONCLUSION

Accordingly, we affirm the rulings of the trial court respecting the issues presently before us on appeal and, thusly, we affirm Frith’s conviction and sentence.
AFFIRMED.

. "A post verdict [sic] judgment verdict of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.” La.C.Cr.P. art. 821(B). Accordingly, a motion for post-verdict judgment of acquittal raises the question of sufficiency of the evidence. See State v. Thibodeaux, 98-1673, p. 12 (La.9/8/99), 750 So.2d 916, 926.

. In the alternative, Frith requests this court remand the matter for a motion for new trial. La.C.Cr.P. art. 853 provides that if an appeal is pending, a trial court may hear a motion for new trial only on remand of the case. Once this court issues an opinion, the trial court will be vested with jurisdiction to hear a motion for new trial should the defendant choose to file one. Frith never filed a motion to remand the matter in order to hear a motion for new trial, and the record before us does not reflect that a motion for new trial has ever been filed in the trial court on this basis.