459 So.2d 669 (1984)
STATE of Louisiana
v.
Calvin L. RODNEY (AKA: Kalvin L. Gerold).
No. KA 2130.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1984.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joanne C. Marier, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Deana Greengus, Student Atty., Elizabeth W. Cole, Supervising Atty., New Orleans, for defendant-appellant.
Before GULOTTA, SCHOTT and WARD, JJ.
SCHOTT, Judge.
Defendant was convicted of two counts of simple robbery and sentenced to seven years at hard labor on each count to run concurrently.
Joyce Washington and Livinia Sarrazan were robbed at gunpoint at 2:30 A.M. on August 31, 1983 of their jewelry and purses. On the afternoon of the same day Washington was looking for the jewelry in the neighborhood when she spotted the man who robbed her. She was in an automobile with her daughter, Gaynelle Anderson, who was driving, and two girls. Washington and one of the girls got out of the car to have a closer look at the man, and he picked up a white bag and ran away. Anderson pursued him in the car *670 and saw him run into a house on Brainard Street. During the chase he dropped the bag once, and, as he picked it up, some things fell to the ground. Anderson got out of the car and picked some of these up which were identified by Washington as some of the jewelry stolen from her.
George Etienne, the owner of the Brainard Street house testified that he was on his way out of the house, when defendant, whom, he knew, came running in with a white bag and said he was being chased.
In the meantime the police had been summoned, they converged on the scene, and arrested defendant who was identified by the victims and witnesses as the robber and the person they chased. After obtaining permission from Etienne, the police searched his house and found the bag defendant was carrying containing some of the victims' jewelry and the clothing defendant wore when he committed the crime.
Washington and Sarrazan testified that they had $268.00 and $750.00 respectively in their purses. When he was arrested defendant had $1300.00 on his person.
We have examined the record for errors patent and find none.
As can be seen from the above summary of the evidence, when it is viewed in the light most favorable to the prosecution any rational trier of fact could have found that the essential elements of the crime of simple robbery were proved beyond a reasonable doubt.

ASSIGNMENT OF ERROR 1
During her testimony Joyce Washington stated that she refused to discuss the case with defense counsel prior to trial as per instructions from the prosecution. Defendant moved for a mistrial which was denied. By this assignment he contends that he was deprived of his rights under the Sixth Amendment of the United States Constitution. He argues that he was unable to get the facts necessary to conduct an adequate cross-examination of Washington and was misled as to the strength of the prosecution's case.
We are not persuaded that defendant's Sixth Amendment right to confrontation of his adverse witnesses includes the right to interview them in advance of trial. In any event, defendant was not prejudiced because all of the facts testified to by Washington were brought out at the motions hearing twelve days before trial. This assignment has no merit.

ASSIGNMENT OF ERROR 2
By this assignment defendant complains because at the time of his arrest two other armed robbery charges were pending against him and yet all the money was admitted into evidence in this particular case without an identification of the money as that taken in this robbery. Defendant argues that this prejudiced him because the jury was misled as to the amount taken. This currency was properly identified as that which was found on defendant's person some twelve hours after the robbery. It has some legitimate probative value. Nothing was said or done to suggest to the jury that some of the money was taken in other robberies. This assignment has no merit.

ASSIGNMENT OF ERROR 3
Prior to the judge's charge to the jury defendant's counsel formally requested that the court not define "reasonable doubt" since this might "invite the jury to convict on a lesser standard of proof." Nevertheless, the judge included the following in his charge after the usual instructions on presumption of innocence, burden of proof, and reasonable doubt:
"Reasonable doubt is doubt that must be based upon reason and it must be substantial rather than speculative. It must be sufficient enough to cause a reasonable person to hesitate to act in important affairs of a person's life. This doubt must be a reasonable one, one founded on a real tangible basis and not upon a mere conjecture. Reasonable doubt is not a mere possible doubt, it is *671 an actual doubt. It is a serious doubt for which you could give a good reason. There would be reasonable doubt if, after all the evidence is compared and considered by you, and in your mind you do not have an abiding conviction to a moral certainty of the guilt of the defendant or defendants. A reasonable doubt is one based upon reason and common sense. I charge you that a defendant is never to be convicted upon mere suspicion, conjecture, or probability of guilt. If you entertain any reasonable doubt as to any element necessary to constitute the defendant's guilt it is your sworn duty to give the defendant the benefit of that doubt and acquit him. On the other hand, if you find from the testimony and evidence that the State has proven the defendant guilty beyond a reasonable doubt then you are to return a verdict of guilty...."
By this assignment defendant contends that the words reasonable doubt are self explanatory and require no definition. He argues that the judge's emphasis of the definition caused the jury to consider their own doubts as insufficient to meet the high standards of reasonableness set by the judge and to disregard their own doubts about the state's case. Thus, says defendant, the jury was invited to convict on a lesser standard of proof than required.
Defendant's arguments find some support in State v. McDaniel, 410 So.2d 754 (La.1982) where the court reversed a conviction because of the inclusion in the charge of a definition or discussion of the meaning of reasonable doubt which the court found to be misleading and confusing. Although the trial court is authorized by LSA-C.Cr.P. Art. 804 to define reasonable doubt, it is usually preferable to read only the language of Art. 804 and no more. State v. McDaniel, supra.
However, the charge in the instant case does not contain the language, "It [reasonable doubt] must be one that would make you feel morally uncertain as to the defendant's guilt" which seemed to tilt the court toward a reversal in the McDaniel case. Furthermore, the reversal in McDaniel was based not only on the erroneous "morally uncertain" language of the charge but also because of other language in the charge which misled the jury from engaging in reasonable doubt because of a lack of evidence in the case.
The charge in the instant case is highly similar to the one in State v. Taylor, 410 So.2d 224 (La.1982) decided shortly before McDaniel. In Taylor the jury was told that reasonable doubt was "one that would make you feel that you had not an abiding conviction to a moral certainty of the defendant's guilt," and the court summarily dismissed defendant's arguments that he was prejudiced.
We conclude, as in Taylor, that the charge is lengthy and to some extent confusing in parts, but, taken as a whole, is clear enough for a reasonable person of ordinary intelligence to understand the meaning of reasonable doubt. Thus, this assignment has no merit.
Accordingly the conviction and sentence are affirmed.
AFFIRMED.