614 So.2d 97 (1993)
STATE of Louisiana, Appellee,
v.
Randy L. DANIELS, Appellant.
No. 24451-KA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
Rehearing Denied February 18, 1993.
*101 Hunter, Scott, Blue, Johnson & Ross, Robert C. Johnson, Monroe, for appellant.
Jerry L. Jones, Dist. Atty., H. Stephens Winters, Asst. Dist. Atty., Monroe, for appellee.
Before SEXTON, LINDSAY and STEWART, JJ.
STEWART, Judge.
Defendant, Randy L. Daniels, was charged via bill of information with one count of possession of cocaine with intent to distribute, in violation of LSA-R.S. 40:967. A 10-2 jury found him guilty on a responsive verdict of attempted possession with intent to distribute, in violation of LSA-R.S. 14:27 and 40:967. He was sentenced to serve 108 months in prison, pursuant to the Louisiana sentencing guidelines. Daniels appeals his conviction and sentence asserting insufficiency of the evidence, excessiveness of sentence, and errors in admission of certain testimony and other evidence. Finding no merit to Daniels' assignments of error, we affirm.

Factual Background
On November 7, 1990, Officer Kurt Manasco of the Monroe Police Department stopped Randy L. Daniels at a convenience store for not having a valid motor vehicle inspection sticker. The sticker had been applied after having been removed, and had the word "void" or "invalid" among the markings which appeared upon its removal. An unnamed passenger had gone into the store when Manasco pulled up, and was not involved further. Manasco placed Daniels under arrest for driving with an invalid inspection sticker. Daniels became belligerent and Manasco called for additional police officers. After the other officers arrived, Manasco asked to see Daniels' registration and proof of insurance. Daniels could not produce the required documents and was cited for driving without insurance. Manasco asked Daniels if there was someone he could call to drive his car. When Daniels said no, Manasco called for a tow truck and announced his intention to conduct an inventory search of the car. He looked into the car through a window and saw a pill bottle, in plain view, in the car's ashtray. He asked Officer Kramel to look at the pill bottle. Daniels fled. Officers Manasco and Kramel caught him a block away. He was advised of his rights and blurted out that the charge would not stick because they did not have probable cause to search his car. The pill bottle contained 35 pieces of crack cocaine.
Daniels was charged by bill of information with possession of cocaine with intent to distribute. A 12-person jury found Daniels guilty of attempted possession of cocaine with intent to distribute. After pre-sentence investigation, the trial court sentenced Daniels to 108 months at hard labor. Daniels appeals his conviction and sentence, asserting that various testimony and physical evidence were improperly admitted, and that his sentence is excessive. We disagree.

Motion to Suppress
Daniels urges several bases for his contention that the trial court erred in denying his pre-trial motion to suppress his *102 statements and to suppress the contraband obtained from the car. In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion but may also consider pertinent evidence given at trial. State v. Harris, 444 So.2d 257 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1234 (1984).

The initial stop.
One of Daniels' assertions is that Officer Manasco lacked probable cause or reasonable suspicion to make the initial stop, and therefore all evidence subsequently obtained should have been suppressed.
The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Fauria, 393 So.2d 688 (La. 1981); State v. Taylor, 363 So.2d 699 (La. 1978); LSA-C.Cr.P. Art. 215.1. The officer must be able to articulate specific facts which warrant the intrusion. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, sub nom. Flowers v. Louisiana, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984).
Officer Manasco described the markings which appear on a motor vehicle inspection (MVI) sticker when it is removed from a windshield:
Q. Can you tell the jury what the invalid inspection sticker looked like from your position?
A. When a ... an inspection sticker is invalid if it has been pulled off and then placed back on the window. Part of the print on the actual sticker peals [sic] off and it makes a zigzag type of pattern on the inspection sticker and it also prints out ... comes out invalid. It states across the inspection sticker invalid.
He testified that he observed these distinctive markings on the instant MVI sticker. Manasco articulated the specific facts which formed the basis for his reasonable suspicion that an offense had been committed. We find nothing improper regarding the initial stop.

Defendant's statements.
Daniels also complains that he made inculpatory statements about the MVI sticker without having been advised of his Miranda rights. The evidence reveals that Officer Manasco inquired about the MVI sticker and Daniels told Officer Manasco that the sticker belonged to the car but had been transferred from the car's previous windshield which had been replaced with a new one.
Miranda warnings are not a prerequisite to admissibility of statements taken during a noncustodial, general, on-the-scene investigation, conducted to determine the facts and circumstances surrounding a possible crime, absent a showing that the investigation has passed the investigatory stage and has focused on the defendant. State v. White, 399 So.2d 172 (La.1981). The statements about the windshield were made during the initial stage of the investigatory stop, before Manasco had decided to arrest Daniels. Thus, Miranda warnings were not necessary.
The relevance of this argument is negligible because the traffic offense was not an issue before the jury. Daniels makes no showing that admission of these statements was prejudicial to him, or affected the outcome of the trial. The statements show background for how the police became involved, but they do not inculpate Daniels in the drug charge. This portion of the assignment is without merit.
Another of Daniels' contentions is that statements he made in the following context should have been suppressed: Officers apprehended Daniels after he fled the scene. Daniels told them that the charge would not stick because they did not have enough probable cause to search the vehicle. Daniels also indicated that the contraband was not his.
Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible into evidence without Miranda warnings even when the defendant is in *103 custody. State v. Robinson, 384 So.2d 332 (La.1980); State v. Reed, 499 So.2d 132 (La.App. 2d Cir.1986). The record reveals that Daniels blurted out the remark without prompting from or questioning by the police. Accordingly, this portion of the assignment is without merit.

The contraband seized from the car.
Finally, Daniels challenges the admissibility of the pill bottle which contained the cocaine. Officers searched the car to inventory its contents. They had neither Daniels' consent to search nor a search warrant. Daniels contends that the search of his car was illegal and that any evidence seized therefrom should have been suppressed. The only evidence seized from the car and admitted at trial is the plastic pill bottle containing the cocaine.
Evidence regarding the search is as follows: Officer Manasco placed Daniels under arrest for operating a vehicle with a switched inspection sticker and asked Daniels if anyone could come to pick up the car. Daniels indicated there was no one who could pick it up. According to the evidence, it was normal procedure to make arrests for switched MVI sticker, as well as to ask an arrested person if they could call someone to pick up their car. Manasco followed routine procedure and called for a tow truck.
Manasco asked Daniels if he had any proof of insurance and registration. Daniels got papers from the glove compartment. They stood at the rear of the car looking through the papers to find the requested documents. Back-up Officers Kramel and Tramble began an inventory of the car to account for any valuable property. Manasco looked into the car through the rear window and saw a medicine bottle protruding from the ashtray. When Manasco asked Kramel to look at the bottle, Daniels fled. Manasco and Kramel chased Daniels. Manasco captured him, and advised him of his Miranda rights. As he was being returned to the car he said something to the effect of: "It won't stick. Y'all didn't have enough probable cause to go in my car."
Tramble had recovered the pill bottle while Manasco and Kramel pursued Daniels. Tramble held the bottle up and could see its contents through the translucent plastic. He then looked inside the bottle and observed that it contained about 30 pieces of suspected cocaine. When the other two officers returned with Daniels, Tramble gave the bottle to Manasco. Manasco looked inside the bottle and saw that it contained 30 to 40 rocks of what appeared to be crack cocaine.
Officer Manasco advised Daniels that he was also under arrest for additional charges of possession of cocaine with intent to distribute, and resisting an officer by flight. The officers completed the inventory and found no other drugs or paraphernalia. They also found no valuables in the car or on Daniels, who carried about $40.
When a warrantless search occurs, the state has the burden of showing the search was justified as an exception to the warrant requirement of the Fourth Amendment. Two such exceptions are (1) the "plain view doctrine" and (2) an inventory search.
The plain view doctrine provides that evidence which was discovered inadvertently and under exigent circumstances is admissible. State v. Doucet, 359 So.2d 1239 (La.1977). An officer who peers into the interior of a vehicle during a legitimate traffic stop is not conducting a search within the meaning of the Fourth Amendment. Brumfield v. Jones, 849 F.2d 152 (5th Cir. La.1988).
Under the inventory search exception, the state must show that impoundment was necessary and that the inventory was necessary and reasonable in its scope. State v. Sims, 426 So.2d 148 (La.1983); State v. Crosby, 403 So.2d 1217 (La.1981). When a car is impounded, standard police procedure in making a reasonable inventory search to preserve a car owner's property and protect the police against claims of lost or stolen property does not constitute an unreasonable search. State v. LaRue, 368 So.2d 1048 (La.1979). If the instant *104 search was a true inventory and not a sham, then it falls within the inventory exception to the warrant requirement.
South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), upheld police intrusions into automobiles impounded or otherwise in lawful custody where the process was aimed to securing or protecting the car and its contents. This was followed in Louisiana by State v. Jewell, 338 So.2d 633 (La.1976) which held that a true inventory search does not violate the state constitution's prohibition against unreasonable searches.[1]
Indicia of whether a search was a true inventory or a sham include: (1) whether the officer asked for consent to search, (2) whether the officer asked if other arrangements could be made for the vehicle, (3) whether the officer called for a tow truck prior to starting the search, (4) whether the search was conducted at the site of the arrest or at the place of storage, and (5) whether the officer asked if the vehicle contained any valuables. See State v. Schmidt, 359 So.2d 133 (La.1978) and cases cited therein. The Schmidt court found all five factors against the officer and suppressed the evidence.
Applying these factors to the instant case, Officer Manasco testified that, under circumstances such as the instant case where there is no one who can come and remove the vehicle from the scene, it is routine to impound the vehicle because the officer is then responsible for the vehicle and its contents. He also testified that an inventory is conducted to document the contents of the vehicle. Officer Manasco did not ask for consent to search the car and did not ask whether there were any valuables in the car. He inquired about other arrangements for the car, and called for a tow truck prior to the inventory search. However, the search was conducted at the scene rather than at the storage site. Although three of these factors militate in Daniels' favor, the evidence as a whole does not suggest that the inventory search was a sham.
We have already found that the initial traffic stop was lawful. Manasco followed standard, but not fully explained or challenged, police procedure. He considered impoundment to be necessary once he determined that no one was available to remove the car on Daniels' behalf. A tow truck was called before the inventory was begun and before the bottle was seized during the inventory. There is no showing that the inventory was not conducted pursuant to normal procedures, or that it was conducted improperly. The bottle was seen in plain view and was not a closed container such as a suitcase. Because Manasco initially observed the pill bottle in plain view, it was not the subject of a search. Moreover, Tramble participated in the inventory search and seized the bottle under the inventory exception to the search warrant requirement. The search and seizure falls within either of two exceptions to the search warrant requirement, therefore this assignment lacks merit.
Although not argued by Daniels, we note that both LSA-C.Cr.P. Art. 211 and LSA-R.S. 32:391A provide for mandatory issuance of a summons in lieu of a full custody arrest, if certain conditions are met. These statutes read as follows:
Art. 211. Summons by officer instead of arrest and booking
A. When it is lawful for a peace officer to arrest a person without a warrant for a misdemeanor, he shall give a written summons instead of making an arrest if all of the following exist:
(1) The officer has reasonable grounds to believe that the person will appear upon summons;
(2) The officer has no reasonable grounds to believe that the person will cause injury to himself or another or damage to property or will continue in *105 the same or a similar offense unless immediately arrested and booked;
(3) There is no necessity to book the person to comply with routine identification procedures.
B. In any case in which a summons has been issued, a warrant of arrest may later be issued in its place.
§ 391. Appearance upon arrest
A. Whenever any person is arrested for a violation of any provision of this Chapter or any regulation of the department or of the secretary of the Department Public Safety adopted pursuant thereto, except as otherwise provided in this Section, the arresting officer shall take his name, address, the license number of his motor vehicle, and the number of his operator's license, and shall issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons and notice. The time shall be at least five days after arrest, unless the person arrested demands an earlier hearing. If the person arrested demands an earlier hearing, he shall have a right to an immediate hearing or a hearing within twenty-four hours, at a convenient hour, to be before a magistrate within the parish where the offense was committed. Except as otherwise provided in this Section, the person arrested shall have the option of remaining in custody pending his furnishing bail as fixed by a magistrate or depositing his operator's license with the arresting officer, as provided in R.S. 32:411.
However, R.S. 32:391C provides specific authorization for the arresting officer's traditional discretion to institute a full custody arrest. State v. Gardner, 476 So.2d 938, 942 (La.App. 2d Cir.1985), writ denied 478 So.2d 1233 (La.1985). Subsection C of R.S. 32:391 reads as follows:
This Section does not apply to any person charged with an offense involving or contributing to an accident resulting in injury or death to any person, or to any person charged with driving while under the influence of intoxicants or narcotics, or to any person whom the arresting officer has good cause to believe has committed any felony or misdemeanor, and in any of these cases the arresting officer shall immediately take the person arrested before the nearest or most accessible magistrate having jurisdiction.
In Gardner, supra at 941, this court explained that
[R.S. 32:391C] is generally designed to deal with those situations the legislature had considered to be more serious than simple violations of the Highway Regulatory Act where no accident, injury or damage has occurred. Therefore, in situations contemplated by C above, the arrested person must be taken before a magistrate, i.e., the statute directs that he shall be subjected to a full custody arrest, rather than being issued a summons with the options available under R.S. 391A and B, supra.

Thus, a full custody arrest is mandated where the situation falls under one of the 32:391C exceptions.
In applying C.Cr.P. art. 211, our brethren of the Fourth Circuit determined that law enforcement officers acted lawfully in arresting the defendant where they witnessed the defendant commit misdemeanors. State v. Knight, 574 So.2d 483 (La. App. 4th Cir.1991). There, the court noted that defendants traffic violations were, by definition, misdemeanors. LSA-C.Cr.P. Art. 933. The court reasoned that, if the officers had issued a summons and allowed defendant to drive away with no license plate, defendant would have continued operating the vehicle in contravention of the Louisiana Highway Regulatory Act.
In State v. Brown, 464 So.2d 861 (La. App. 5th Cir.1985), writ denied, 466 So.2d 471 (La.1985), the court found that due to, inter alia, defendant's refusal to discuss his conduct with the officer, the officer had no reason to believe that defendant would stop his offensive conduct upon the mere issuance of a summons.
In the instant case, arresting officer Manasco testified as follows:
I attempted to look at the back of ... when he was explaining to me that the inspection sticker had been pulled off of *106 a previous windshield on that car I attempted to look at the back of the inspection sticker, which is on the inside of the vehicle, and when I started to look at the back he ran up to me in the car and he became very irate with me and verbally abusive and told me I had no right to look at the inspection sticker.
Manasco indicated that, once Daniels became abusive and uncooperative, he decided to place Daniels under arrest for misdemeanor charges. Under these facts and circumstances, we conclude that pursuant to either the more specific R.S. 32:391 or more general C.Cr.P. art. 211, Officer Manasco had authority to place Daniels in full custody. See also, LSA-C.Cr.P. Art. 213.

Mistrial
Daniels challenges several rulings in which the trial court denied his motions for mistrial. We first note several general legal principles applicable to mistrials then address each ruling in chronological order of its occurrence during trial.
The purpose of LSA-C.Cr.P. Arts. 766-768 is to prevent surprise and allow adequate time for preparation of the defense, as well as to avoid certain problems that had been attendant to the mentioning of confessions or inculpatory statements in the State's opening statement. State v. Dickerson, 538 So.2d 1063, 1067 (La.App. 4th Cir.1989); State v. Parker, 436 So.2d 495 (La.1983); State v. Russell, 416 So.2d 1283 (La.1982), cert. denied, 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982). When a defendant is on notice of the state's intention to use his statements and they later are admitted into evidence, the defendant suffers no prejudice from a premature reference during opening statements to the defendant's confession. State v. Whitmore, 353 So.2d 1286 (La.1977).
Mistrial is a drastic remedy and is warranted only when substantial prejudice will otherwise result to the defendant sufficient to deprive him of a fair trial. State v. Smith, 418 So.2d 515 (La.1982). Determining whether such prejudice has resulted is within the sound discretion of the trial judge. State v. Matthews, 552 So.2d 590 (La.App. 2d Cir.1989), writ denied 559 So.2d 137 (La.1990); State v. Smith, supra; State v. Brown, 557 So.2d 1085 (La.App. 2d Cir.1990).

1. State's reference to defendant's statements during opening statement.
During his opening statement, the prosecutor told the jury that after Daniels was apprehended he made "some statements to the officers. I will have them tell you what he said at that point." Defense counsel objected, arguing that the prosecutor had violated LSA-C.Cr.P. Art. 767, which provides that "[t]he state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant." The trial court denied the motion for mistrial, ruling that the statement did not allude to a confession and therefore did not mandate a mistrial. Daniels contends that this ruling was erroneous.
In Whitmore, supra, the court found no error in denial of a motion for mistrial after the prosecutor actually said during opening statements that the defendant had made a confession. Likewise, during opening statements in State v. Dickerson, supra, 538 So.2d at 1067, the prosecutor told the jury it would hear "... that back at headquarters the defendant made some statements to the police...." The court held this vague reference to the statement made by the defendant, not identified as inculpatory or as a confession, was not prejudicial. The statement had been determined to be admissible at a prior hearing. Therefore, the reviewing court reasoned there was no surprise or prejudice, and the trial court correctly had denied the motion for mistrial.
Similarly, Daniels' statements had been ruled admissible at a pre-trial hearing and were admitted at trial. Daniels was on notice of the state's intent to use these statements. The prosecutor made a vague reference to a statement but no direct reference to a confession or inculpatory statement. This assignment lacks merit.

*107 2. Laywitness opinion.

During direct examination, the prosecutor asked officer Manasco if it was against the law to have an invalid MVI sticker, and asked why Manasco wrote a ticket for a switched sticker. Defense counsel objected that the officer was not qualified to give a legal opinion and moved for a mistrial pursuant to LSA-C.Cr.P. Art. 775. The court denied the motion and admonished the jury not to consider anything with regard to any offense involving the sticker.
Daniels argues the court should have granted a mistrial under LSA-C.Cr.P. Art. 775, but cites no authority to support his position that admission of this testimony requires a mistrial. None of the article's six specific grounds for mistrial applies here.[2] We therefore turn to the question of whether the testimony was prejudicial conduct which made it impossible for Daniels to obtain a fair trial.
Manasco testified that the use of a previously removed MVI sticker violates the law even if the sticker is placed on the same vehicle. Daniels argues that, because Manasco was not qualified as an expert on what constitutes a violation of the traffic laws, this testimony was irrelevant and inadmissible. LSA-C.E. Art. 701 allows a lay witness to give opinions which are rationally based on his perception and which are helpful to a clear understanding of his testimony. Manasco's testimony helped the jury understand why the traffic stop occurred and was part of the foundation for testimony and other evidence arising from the officers' subsequent actions. Apart from this foundation, the testimony objected to had little, if any, relevance to the charged offense.
Daniels asserts that allowing this "opinion" elevated the witness' credibility in the minds of the jury. This contention is speculative at best. There is no indication that Manasco's understanding of the switched MVI statute either made it impossible for Daniels to obtain a fair trial or otherwise influenced the jury's determination of guilt on the charge of possession with intent to distribute. This portion of the assignment lacks merit.

3. Undisclosed statement of defendant.
The prosecutor asked Officer Manasco if Daniels had indicated who the passenger was. Manasco responded that Daniels said he did not know the person. Defense counsel moved for mistrial because, during discovery, the state had not disclosed that Daniels had denied knowing the identity of his passenger. After argument by counsel, the court denied Daniels' motion for mistrial.
Daniels argues that admission of the statement put him in the position of either not challenging the statement and allowing the jury to think he was shielding the passenger, or taking the stand to contradict the statement thereby opening himself up to questions about his criminal record.
The notice provisions of LSA-C.Cr.P. Art. 716(B) and (C) are applicable only where the state intends to introduce the defendant's statement at trial. See State v. Johnson, 553 So.2d 865 (La.App. 1st Cir.1989), writ denied, 558 So.2d 600 (La.1990). The state is not required to provide notice of an officer's testimony regarding inculpatory statements made by a defendant, where the state was unaware of the statement and did not intentionally solicit *108 the statement. State v. Johnson, supra.
A similar issue was presented in State v. Mayberry, 457 So.2d 880 (La.App. 3d Cir. 1984), writ denied, 462 So.2d 191 (1984). The defendant contended the trial court erred in denying his motion for mistrial based on grounds of LSA-C.Cr.P. Art. 729.5, failure to comply with discovery, pertaining to an allegedly prejudicial remark by a state's witness. The referenced article provides in pertinent part that if a party has failed to comply with a discovery request the court may grant a continuance, order a mistrial, prohibit the introduction of the evidence, or enter such other order as may be appropriate. Mayberry argued that the allegedly inculpatory remark had not been provided during discovery. The court held the remark was unsolicited and unresponsive to the question propounded. The prosecutor was in good faith and had no prior knowledge of the statement. Therefore, there was no error in denying the motion for mistrial.
Here, the prosecutor asked if Daniels ever indicated who the passenger was. Manasco responded, "No. I asked him who was in the car with him and he said he didn't know that person." As in Johnson and Mayberry, both supra, remarks by the instant prosecutor reveal that the answer was nonresponsive and was not intentionally solicited. Accordingly, the state was under no obligation to provide notice about a statement of which it was unaware and had no intent to introduce. For this reason, we find no merit to this assignment.
Moreover, assuming arguendo that the state had intentionally solicited the statement, this court has ruled that even if there is a discovery violation, there is no reversible error if the defendant does not show the failure resulted in prejudice to him. See State v. Heath, 513 So.2d 493 (La.App. 2d Cir.1987), writ denied, 519 So.2d 141 (La.1988). The trial court has discretion to consider the facts presented and to decide which course, e.g., recess, continuance, or mistrial, the interest of justice requires. State v. Clark, 446 So.2d 293, 296 (La.1984). Daniels did not request a recess, continuance, or admonition. We find that Daniels' speculative assessment of the impact of this statement upon the jury does not constitute a showing of prejudice. See and compare, State v. DeMoss, 582 So.2d 964 (La.App.2d Cir.1991), where it was reversible error to withhold a defendant's rap sheet, the production of which would have altered the defense's trial strategy.
For the foregoing reasons, this assignment lacks merit.

Physical Evidence
Daniels asserts that the trial court erred in allowing admission into evidence of S-1 through S-4: the pill bottle containing the crack cocaine, the drop-off and pick-up receipts from the crime lab, and the lab report. He asserts that the foundation for the exhibits was weak and that the probative value of some of the evidence was greatly outweighed by its prejudice.
Relevant evidence is that which tends to show any fact of consequence to the charge. LSA-C.E. Art. 401. A trial judge is vested with wide discretion in determining relevancy of evidence. His ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Rault, 445 So.2d 1203 (La.1984), cert. denied, sub nom. Rault v. Louisiana, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984), reh. denied, 483 U.S. 1012, 107 S.Ct. 3245, 97 L.Ed.2d 750 (1987); State v. Miles, 402 So.2d 644 (La.1981). Before a piece of evidence can be admitted it must be sufficiently identified as having been involved in the occurrence in question, State v. Comeaux, 524 So.2d 863 (La.App. 3d Cir.1988). When the testifying witness had personal knowledge of the items and they were readily identifiable, the state laid a proper foundation for their admission into evidence. State v. Robertson, 358 So.2d 931 (La.1978).
To admit demonstrative evidence at trial, the object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation *109 at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. State v. Caston, 583 So.2d 42 (La. App. 2d Cir.1991), writ denied, 585 So.2d 575 (La.1991); State v. Anderson, 554 So.2d 133 (La.App. 2d Cir.1989).
Testimony and other evidence revealed that Officer Tramble took the pill bottle (S-1) from the ashtray and gave it to Officer Manasco. Manasco gave the bottle to Detective Paul Benjamin, an agent from Metro Narcotics Unit, who submitted it to the crime lab for analysis of the contents. Laboratory analysis determined the substance was cocaine. Benjamin received the drop off receipt (S-2) from the North Delta Crime Lab upon delivery of the bottle to the crime lab for analysis. Benjamin also picked up the evidence after it was analyzed and received the pickup receipt (S-3) from the crime lab.
Linda Armstrong, an employee of the crime lab and the director of the laboratory, testified that she analyzed the pill bottle marked S-1. She identified it by the case number which was assigned to the evidence at the crime lab, and by her initials. She also identified S-2 and S-3 as bearing her signatures and the same case number as S-1. She identified S-4 as being a report of her findings that the substance in the pill bottle was cocaine.
When the state moved for admission into evidence of S-1 through S-4, defense counsel objected as to relevance, made a nonspecific objection to the foundation, and reurged the grounds set forth in the motion to suppress. The objection was overruled.
Exhibits S-1 through S-4 were relevant to prove the identity of the substance seized from Daniels' car and to prove its chain of custody. The state laid the proper foundation for each of these exhibits. Accordingly, this assignment lacks merit.

Expert Witness Testimony
The state tendered Detective James Fried as an expert in packaging, distribution, sale, and cash value of crack cocaine. Over Daniels' objection, the trial court accepted Fried as an expert witness. The trial court then told the jury that the court's acceptance meant that Fried may give his opinion but did not indicate that the opinion was correct. Daniels urges that the trial court erred by allowing Detective James Fried to testify as an expert witness on "the ultimate issue" for determination by the jury.
LSA-C.E. Art. 702 allows a witness qualified as an expert to testify when specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Extensive training, years of experience, and the taking of specialized courses can qualify a police officer as an expert. State v. Honeyman, 565 So.2d 961 (La.App. 2d Cir.1990). Questions on the procedures used in the sale of controlled substances are a proper field for expert testimony. State v. Carter, 347 So.2d 236 (La.1977).
According to the record, Detective James Fried had been a police officer for 13 years, and had worked narcotics for over 6 years. He attended basic and advanced schools for drug enforcement officers. He taught at the Monroe police academy and at other schools. He had participated in more than 20 undercover drug operations. He had purchased narcotics 10 to 15 times, and had supervised "close to" a thousand purchases over the years. Many of those purchases involved crack cocaine. He also had extensive training in the packaging and distribution of cocaine and had been qualified as an expert witness five or six times in the Fourth Judicial District Court.
After cross-examining Fried regarding his qualifications, defense counsel objected to Fried being accepted as an expert witness "based upon the foundation that's been laid to this point." Counsel also objected to the relevancy and prejudicial effect of the testimony. We agree with the trial court that Fried's background was sufficient to qualify him as an expert. This part of the assignment is without merit. We now address whether Fried's testimony *110 impermissibly embraced "the ultimate issue" to be determined by the jury.
LSA-C.E. Art. 704 provides that in criminal cases an expert witness shall not express an opinion as to the guilt or innocence of the accused.
Fried looked at the rocks of cocaine from S-1. He opined that each would sell for $50. Thus, the contents of the bottle would be worth between $1,500 and $1,750. When the prosecutor asked what the quantity of crack indicated, defense counsel objected on the ground that "it calls for an ultimate question." The prosecutor rephrased the question and Fried testified that this amount (quantity) of cocaine was consistent with possession of cocaine with intent to distribute. Defense counsel's objection and request for mistrial, which did not state any grounds, was overruled. When the prosecutor asked the question again, counsel renewed the "ultimate issue" objection, and asserted that the question was asked and answered. The court sustained the objection on grounds of asked and answered.
When the prosecutor later asked whether the amount of cocaine was consistent with street level sales, counsel objected on the ultimate issue ground. The court sustained the objection, but denied the motion for mistrial.
The jurisprudence condemns the use of hypothetical questions which parallel the actual fact situation of the case when the prosecutor gets the expert witness to give an opinion that the person described "would be involved in the distribution of marijuana," State v. Wheeler, 416 So.2d 78 (La.1982), or an opinion that the person described "would be there for the purpose of selling or distributing," State v. White, 450 So.2d 648 (La.1984). These cases emphasize the prohibition against using a hypothet based on the observations made by persons other than the witness, and the witness answers that the person described is committing the offense charged. The White court specifically stated that it is permissible for an expert to testify that possession of 25 foils of heroin was generally considered a wholesale amount.
In the instant case, the witness said possession of 35 to 40 pieces of crack was consistent with intent to distribute. The extent of Fried's testimony was that he examined the contents of the pill bottle, estimated the value of the cocaine, and indicated whether this amount was consistent with distribution and/or personal use. His testimony was permissible as it did not say that either Daniels, or a hypothetical person under similar facts, intended to distribute the cocaine. Also, the quantity possessed is only one of the factors indicative of intent to distribute. See State v. House, 325 So.2d 222 (La.1975). Thus, the jury still had to decide the ultimate issue of whether Daniels had the requisite intent to distribute cocaine. Accordingly, we find no error in the trial court's allowance of Fried's testimony. This assignment lacks merit.

Sufficiency of the Evidence
Daniels was charged with possession of cocaine with intent to distribute. The jury returned the legislatively responsive verdict of guilty of attempted possession of cocaine with intent to distribute. LSA-C.Cr.P. Art. 814A.49. Daniels argues that the state failed to prove the elements of attempted possession of cocaine with intent to distribute. The main thrust of Daniels' argument is that there was no proof of his intent to distribute, although he also argues that there was no proof that he was in possession of the cocaine or that he performed some act tending directly toward accomplishment of the distribution.
The attempt statute, LSA-R.S. 14:27, provides that any person who, having a specific intent to commit a crime, does any act for the purpose of and tending directly toward the accomplishment of his object is guilty of an attempt to commit the offense intended. We shall therefore determine whether the state proved, beyond a reasonable doubt, an attempted possession and an intent to distribute cocaine. See State v. Hughes, 587 So.2d 31 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1197 (1992).
*111 Attempted possession may be proved by constructive possession. Hughes, supra; Matthews, supra, 552 So.2d 590. Constructive possession may be proved by showing the defendant had actual dominion and control of the substance. State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989). The court may also consider a defendant's physical proximity to the drugs, his knowledge that illegal drugs were in the area, his access to the area where the drugs were found, and evidence of recent drug use by the defendant. Hughes and Tyler, both supra;
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accord: State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La. App. 2d Cir.1988).
The crime of possession with intent to distribute cocaine requires proof that the defendant was in possession of a controlled dangerous substance (CDS) with specific intent to distribute it. State v. Elzie, 343 So.2d 712 (La.1977); State v. Tyler, supra.
Constructive possession means having an object subject to one's dominion and control, with knowledge of its presence, even though it is not in one's physical possession. State v. Perez, 569 So.2d 609 (La.App. 2d Cir.1990), writ denied, 575 So.2d 365 (La.1991). Factors which may be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his access to the area where the drugs were found, and his physical proximity to the drugs. State v. Tyler, supra. Packages of CDS found in a car near the driver generally are found to be within the driver's constructive possession. State v. Tyler, supra; State v. Ankrum, 573 So.2d 244 (La.App. 1st Cir.1990); State v. Morgan, 557 So.2d 977 (La.App. 4th Cir.1990), writ denied, 564 So.2d 317 (La.1990).
Where intent to distribute is at issue, the fact finder may consider factors such as the following: (1) whether the defendant actually distributed or attempted to distribute the drug, (2) whether it was in a form usually associated with possession for distribution, (3) whether the amount was such as to create a presumption of attempt to distribute, (4) whether the amount found on the defendant was inconsistent with personal use, and (5) whether there was any paraphernalia evidencing an intent to distribute. House, supra, 325 So.2d 222, cited in State v. Hunt, 568 So.2d 1104 (La.App. 2d Cir.1990), writ granted in part, 573 So.2d 1130 (La.1991), denied in part, 580 So.2d 914 (La.1991).
Evidence of flight, concealment, and attempt to avoid apprehension is relevant. It indicates consciousness of guilt. State v. Davies, 350 So.2d 586 (La.1977); State v. Morris, 521 So.2d 1214 (La.App. 2d Cir.1988), writ denied, 530 So.2d 80 (La. 1988).
Officer Manasco testified that the pill bottle was a fluorescent orange color. It was visible in plain view in the open ashtray between the driver and passenger front seats of the car which Daniels drove. Daniels did not run until Manasco asked someone to check the bottle. Based upon the evidence presented at trial, a rational trier of fact could determine that it was not reasonable for Daniels to run away from *112 an arrest for a non-moving traffic violation. Furthermore, a trier of fact could rationally conclude that Daniels' act of flight, along with his statement that "the charge wouldn't stick" indicated guilty knowledge of the bottle's contents, as both these events occurred before Manasco, his arresting officer, knew what the bottle contained.
Linda Armstrong, an expert witness and crime technician, determined that the substance in the bottle was cocaine.
Detective James Fried of the Monroe Police Department and the Metro Narcotics Unit testified as an expert in packaging, distribution, sale and value of crack cocaine. Fried had participated in, and supervised, numerous street purchases of crack cocaine. In his opinion, 35 rocks the size of the crack he observed in the pill bottle were worth from $1,500 to $1,750 because, in his experience, similarly sized cocaine rocks sold for $50 per rock. Fried testified that people who sell drugs on the street carry them in a matchbox or in a pill bottle and that pill bottles are very common containers for street level sales.
According to Fried, a heavy user normally would carry a pipe or a "straight shooter" and that it would be abnormal for a heavy user to possess that quantity unless he was selling. Fried told the jury that this quantity was consistent with possession with intent to distribute, and that this amount was inconsistent with personal use even for a wealthy person or a heavy user. Other evidence revealed that Daniels did not carry any paraphernalia which indicated personal use.
State v. Hughes, supra, also involved a challenge to the sufficiency of the evidence to support a verdict of guilty of attempted possession with intent to distribute. The state proved dominion and control over the drug and that the quantity was inconsistent with personal use. Therefore, the assignment was found to be without merit. In the instant case, Daniels exerted dominion and control over the drug which was within his arm's reach inside the car he was driving. His flight shows guilty knowledge. The quantity possessed was inconsistent with personal use and was packaged in a manner commonly used by dealers.
On this record, we find that a rational trier of fact could have found that Daniels was guilty of possession of cocaine with intent to distribute. This assignment has no merit.

Jury Charge on Reasonable Doubt
Defense counsel objected during the charge conference to the court giving any definition of "reasonable doubt." LSA-C.Cr.P. Art. 804 gives the trial court discretion to define reasonable doubt if it so desires. The following language is the instruction which the jury received:
It is the duty of the jury, if not convinced of the guilt of a defendant beyond a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, to give him the benefit of that doubt and return a verdict of not guilty. And, even where the evidence demonstrates a probability of guilt, if it does not establish it beyond a reasonable doubt, you must acquit the defendant. Now, this doubt must be a reasonable one; that is, one founded upon some real, tangible, or substantial basis, and not upon some mere caprice, fancy or conjecture. it [sic] is not a doubt, for instance, concocted in your mind out of some feeling of sympathy for the accused to escape the penalty of the law. Instead, it is a doubt arising out of the evidence, or lack of evidence in the case. If, after giving a fair and impartial consideration to all facts in the case, you find the evidence or lack of evidence unsatisfactory upon any single point that is indispensably necessary to constitute the accused's guilt, then this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty. On the other hand, if you have no such reasonable doubt and the State has convinced you of the accused's guilty [sic], your duty then is to render a verdict of guilty.
Daniels argues in brief that the charge given at trial was "similar" to one condemned in Cage v. Louisiana, 498 U.S. 39, *113 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), and asserts that this charge violated his right to due process.
A jury charge must be considered as a whole, and particular expressions in a charge must be construed in context of the entire charge. A conviction will not be reversed on the ground of an erroneous charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337 (La. 1981), cert. denied sub nom. Motton v. Louisiana, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981).
In State v. Cage, 554 So.2d 39 (La.1989), reversed sub nom. Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), on remand, State v. Cage, 583 So.2d 1125 (La.1991), cert. denied sub nom. Cage v. Louisiana, ___ U.S. ___, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991), the Louisiana Supreme Court affirmed the defendant's conviction where the trial court instructed the jury as follows:
If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such a doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty.

Cage, 554 So.2d at 41 (emphasis in original).
In a per curiam opinion, the United States Supreme Court found that
[T]he words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.*
Cage v. Louisiana, supra (* footnote omitted).
The Court reversed, the Louisiana Supreme Court judgment and remanded the case for further proceedings.
On remand, the Louisiana Supreme Court determined that, although the instruction was error, it was trial error and therefore was subject to harmless error analysis. The court again affirmed the conviction, reasoning that, because of the overwhelming evidence of defendant's guilt, was harmless beyond a reasonable doubt. State v. Cage, 583 So.2d 1125 (La. 1991), cert. denied, sub nom. Cage v. Louisiana, ___ U.S. ___, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991).
Although pre-Cage, our brethren of the Fifth Circuit found no error in an instruction which defined reasonable doubt as "a reasonable one, that is, one found upon a real, tangible, substantial basis and not upon mere caprice, fancy, or conjecture." State v. Grant, 517 So.2d 1151, 1156 (La. App. 5th Cir.1987); See also, State v. Rodney, 459 So.2d 669 (La.App. 4th Cir.1984) and State v. Augustine, 482 So.2d 150 (La. App. 4th Cir.1986).
Similarly, the Fourth Circuit approved the following language which defines reasonable doubt without use of the terms "grave uncertainty" and "moral certainty":
Even where the evidence demonstrates a probability of guilty, if it does not establish it beyond a reasonable doubt, you must acquit the accused. A reasonable doubt is not a mere possible doubt, it should be an actual or substantial doubt, *114 such a doubt as a reasonable person would seriously entertain. It is a serious doubt for which you could give a good reason.
State v. Jones, 582 So.2d 973, 975 (La.App. 4th Cir.1991). In approving this language, the Jones court noted that, "[b]because the present jury charge does not contain two of the three phrases condemned by the United States Supreme Court, Cage v. Louisiana does not control the present case." Id.
We agree with Daniels that the instant jury charge is similar to that used in Cage. In fact, the Cage instruction included the phrase "real tangible substantial basis" the same phrase with which Daniels takes issue. However, this phrase was not the basis upon which Cage v. Louisiana was decided. The United States Supreme Court found that the combination of the terms "substantial," "grave uncertainty," and "moral certainty" violated the Due Process Clause because it suggested a lower degree of proof than is required to convict under the reasonable doubt standard. The instant case does not present such a combination. As in Jones, supra, the instant charge uses the term "substantial" but does not use the terms "grave" and "moral certainty." Accordingly, we find that this case is not controlled by Cage v. Louisiana.
We do not view the language condemned in Cage v. Louisiana to be an exclusive combination of words which violate the Due Process Clause. We therefore encourage trial courts to proceed cautiously when attempting to define reasonable doubt. Such caution is warranted in order to avoid creating the inference that a finding of guilt may be based on a degree of proof which is below that required by the Due Process Clause. Nonetheless, from the manner in which the Louisiana Supreme Court decided State v. Cage, and from other Louisiana cases such as Grant, supra, which approved the phrase used in the instant instruction, we conclude that Louisiana jurisprudence does not deem the instant definition to be a violation of due process. Accordingly, although we find the phrase "founded upon some real, tangible, or substantial basis," to be perilously close to the prohibited suggestion, we conclude that the instant language when construed in the context of the entire charge, does not constitute error. For the foregoing reasons, this assignment lacks merit.

Excessiveness of Sentence
Daniels was sentenced to serve 108 months at hard labor, to run consecutively to a 15-year hard labor sentence for a drug which Daniels already was serving.
The sentence in this case was imposed after the Louisiana Sentencing Guidelines became effective. LSA-C.Cr.P. Art. 881.1 provides that failure to make a motion for reconsideration of sentence and to state specific grounds for the motion preclude a defendant from raising an objection to the sentence on appeal or review. Counsel did not file such a motion nor did he inform the trial court of the grounds for objection. Accordingly, these assignments of error are not properly before this court and are not subject to review.

Errors Patent
LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform Daniels. However, this defect is not grounds to reverse the sentence or remand the case for resentencing. LSA-C.Cr.P. Art. 921. The district court is directed to inform Daniels of the provisions of Art. 930.8 and to file written proof that he received the notice in the record of the proceedings.

Conclusion
For the foregoing reasons, Randy L. Daniels' conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, LINDSAY, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] It is noted that Opperman, supra, and its progeny Florida v. Wells, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), deal more directly with the opening of closed containers such as suitcases and the requirements of departmental policies as to how closed containers are to be treated during inventory searches. That issue is not involved here because the instant translucent plastic pill bottle is distinguishable from a suitcase.
[2] Art. 775. Mistrial; grounds for

A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.