633 So.2d 819 (1994)
STATE of Louisiana
v.
Randolph VANCE.
No. 93-KA-1389.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1994.
Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Before CIACCIO, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
Defendant, Randolph Vance, and his co-defendant, Louis Martin, were arrested and charged by bill of information with possession of cocaine, a violation of La.R.S. 40:967(C). Martin pled guilty. Defendant Vance entered a plea of not guilty. The trial court denied defendant's motion to suppress the evidence and, following a jury trial, defendant was found guilty as charged. Defendant was subsequently adjudicated a second felony habitual offender under La.R.S. 15:529.1 and sentenced to serve three years at hard labor. Defendant now appeals.
The record reveals no errors patent. Defendant raises one assignment of error, that the trial court erred in denying his motion to suppress the evidence. Sergeant Steven Gaudet of the New Orleans Police Department testified at the motion to suppress hearing. Sgt. Gaudet stated that on December 19, 1992, at approximately 5:55 P.M., he and Sgt. Timothy Bayard were patrolling in an unmarked police unit when they observed defendant and Martin standing on the uptown river corner of the intersection of General Ogden and Olive Streets. The officers *820 were in an unmarked vehicle but were in uniform. Sgt. Gaudet said he had a perfect side view of the two men. He noticed that defendant had his right hand out, palm up, facing Martin. Martin appeared to be looking at an object in defendant's hand. Martin then picked up something out of defendant's hand. At that point someone whistled, apparently warning the two men of the officers presence.
Sgt. Gaudet testified that the two men looked at the officers and both started to walk away towards Hollygrove Street. Defendant clenched his hand and placed it into his right rear pants pocket. Martin was still holding the object he had taken out of defendant's hand. He had it clenched in his right hand. Sgt. Gaudet, who testified that he had almost twenty years experience working with narcotics, said he believed that he and Sgt. Bayard had interrupted a drug transaction. The officers decided at that point to stop the men. Sgt. Gaudet called out for Martin to stop. Martin refused to stop and Sgt. Gaudet exited the unit to pursue him. Martin then threw a piece of crack cocaine down to the ground which Sgt. Gaudet recovered. After Sgt. Gaudet notified Sgt. Bayard that he had recovered cocaine thrown down by Martin, Sgt. Bayard searched defendant and removed the object which the officers had seen defendant place in his pocket. The object was a matchbox containing two pieces of crack cocaine packaged in the same identical manner as the piece of crack cocaine thrown to the ground by Martin.
Pursuant to La.C.Cr.P. art. 215.1(A), a police officer may stop a person in a public place whom the officer "reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." State v. Ganier, 591 So.2d 1328 (La.App. 4th Cir.1991). See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion required for an investigatory stop is something less than probable cause required for an arrest. State v. Lightfoot, 580 So.2d 702 (La.App. 4th Cir.1991).
Whether there was reasonable cause must be determined under the facts of each case. The officer must have sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Barra, 572 So.2d 1187 (La.App. 4th Cir. 1990), writ denied, 575 So.2d 822 (La.1990). The detaining officers must have knowledge of specific, articulable facts which, if taken together with rational inferences from those facts, reasonably warrant the investigatory stop. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Gervais, 546 So.2d 215 (La.App. 4th Cir.1989).
The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton, [441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984)]. While flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. State v. Belton, supra; State v. Preston, 569 So.2d 50 (La.App. 4th Cir.1990).
State v. Noto, 596 So.2d 416 (La.App. 4th Cir.1992).
In the instant case a police officer with almost twenty years experience working with narcotics cases testified that he observed what in his opinion was a narcotics transaction. One subject transferred something to the other subject. The officer heard someone whistle, warning the two subjects who then noticed the presence of the two officers and immediately began walking away, attempting to conceal the objects they had been handling. At that point the officers had reasonable cause or suspicion to believe the men had been engaged in a narcotics transaction. The officers thus lawfully attempted to make an investigatory stop of the subjects. One, Martin, threw a piece of crack cocaine to the ground. This object was considered abandoned and was lawfully *821 seized by Sgt. Gaudet. State v. Britton, ___ So.2d ___, 93-K-1990 (La. January 27, 1994). Upon recovering this object, which the officer had probable cause to believe was the object he had seen Martin remove from defendant's hand, the officers had probable cause to arrest both Martin and defendant. Defendant was searched incidental to a lawful arrest and the matchbox with two more pieces of crack cocaine was lawfully seized from his back pocket. State v. Williams, 398 So.2d 1112 (La.1981); State v. Hampton, 508 So.2d 135 (La.App. 4th Cir.1987).
All of the evidence seized as a result this street encounter was lawfully seized by the officers. We find no error in the trial court's denial of defendant's motion to suppress the evidence.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
JONES, J., respectfully dissents.
JONES, Judge, dissenting.
I would reverse appellant's conviction and sentence and remand this matter for a new trial.
At the hearing on appellant's Motion to Suppress, the only facts Officer Gaudet articulated as to why he and Officer Bayard believed that they had interrupted a drug deal are the following: the appellant had something in his hand showing it to Martin; the subjects walked away hurriedly when they observed the officers; and the whistling by other people. Officer Gaudet did not indicate that this was a high drug trafficking area, nor did he indicate that he had received information that drugs were being sold in that area.
La. Const. Art. 1, Sect. 5 provides in part:
Section 5. Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search.
In State v. Tucker, 626 So.2d 707 (La. 1993), the Louisiana Supreme Court adopted California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), defining when a stop has actually occurred as well as the standard for determining the "imminency" of an actual stop which focuses on whether an "actual stop" is "virtually certain to result from the police encounter."
The Court in Tucker listed the following factors to be considered in assessing the extent of police force employed in determining whether that force was "virtually certain" to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Supra at 712-713.
When the officers pulled their car behind Martin and the appellant, the stop was certain. At trial, the prosecutor questioned the officers about the distance the subjects were from the police car:
MR. MCMINN: The time period that had elapsed here, you stated before you never lost sight of Mr. Vance. Is that correct?
OFFICER BAYARD: Yes.
MR. MCMINN: And what was the farthest distance he was away from you at any given point?
OFFICER BAYARD: The farthest distance? The furthest distance was right there at the initial viewing, the width of Olive Street. And then after that, you're talking about just the front end of the car. We were able to turn right on him and put the left bumper right up to his back. So now you're talking about half a length of a car, maybe a quarter of the length of the automobile, whatever the hood of a Ford car is, maybe to this lady here.
*822 Appellant's and Martin's stop was "virtually certain". It would have been difficult for the appellant to successfully flee considering the fact that the officers pulled the bumper of their car on his back. The officers did not have reasonable suspicion to stop either the appellant or Martin. The officers did not articulate any facts that could have led them to believe that the appellant and Martin were engaging in criminal activity. The fact that the appellant and Martin were on the street corner at 5:30 p.m. was not enough to raise reasonable suspicion that criminal activity was in the making. The fact that the appellant had his hand extended towards Martin as if showing him something was not reasonable suspicion to make the stop. Whistles from unknown individuals did not constitute reasonable suspicion that criminal activity had occurred. The abrupt walking away when the police unit was spotted was not enough to make the stop. All of these factors coupled together do not constitute a legitimate stop under La.C.Cr.P. art. 215.1. The stop of the appellant and Martin was unconstitutional.
Finally, the contraband discarded by Martin and the drugs retrieved from the appellant were illegally obtained. An officer may conduct a limited, self-protective search for weapons in conjunction with an investigatory stop, State v. Brown, 482 So.2d 115, 116 (La.App. 4th Cir.), writ denied 487 So.2d 436 (La.1986). Officer Gaudet testified that when he retrieved the crack cocaine thrown down by Martin, Officer Bayard frisked the appellant to see if he also had contraband.
... after I told Sergent Bayard what I had found he conducted a frisk, believing, you know, that the object that Mr. Vance had put in his back pocket may have contained additional contraband.
When police officers make an investigatory stop without the legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. The stop of the appellant and Martin was unconstitutional; therefore any contraband seized from either was illegally seized and should not have been admissible at trial.
The trial court erred in denying appellant's motion to suppress the evidence. The drugs retrieved from the appellant were illegally obtained and therefore should not have been admissible at trial.
Accordingly, I would reverse appellant's conviction and sentence and the case remanded for a new trial.