661 So.2d 152 (1995)
STATE of Louisiana
v.
Mark BRUSER.
No. 95-K-0907.
Court of Appeal of Louisiana, Fourth Circuit.
September 15, 1995.
Rehearing Denied October 25, 1995.
*153 Harry F. Connick, District Attorney for Orleans Parish, Mike Futrell, David Weilbaecher, Jr., Assistant District Attorneys for Orleans Parish, New Orleans, for Relator.
Salvatore Panzeca, Panzeca & D'Angelo, Metairie, for Respondent.
Before BARRY, BYRNES and LANDRIEU, JJ.
BYRNES, Judge.
The state requests a review of the trial court's ruling granting the defendant's motion to suppress the evidence. We reverse and remand.

FACTS
On April 20, 1994, Detective William Marks spoke to a credible, but untested, informant who said that Donald Celestin was selling marijuana and cocaine to dancers employed at the Crescent Cabaret and the Maiden Voyage, two French Quarter establishments. The informant said that Celestin drove a late model blue four-door Lumina to the French Quarter nightly and met with prospective buyers to conduct business. The informer also stated that Mark Bruser is Celestin's supplier of marijuana and cocaine and that Celestin stored large amounts of cash in his residence at 4616 Cleveland Street.
Beginning the next day, Detective Marks and other officers established surveillance of Donald Celestin's residence at 4616 Cleveland Street. The license plate of a 1990 Chevy Lumina, parked in front of the residence, revealed that it belonged to Celestin. Officers watched Celestin leave the residence, retrieve a blue box from the front seat of the Lumina, and place an object into the box. Celestin took the box with him and drove off in a red Chevy Camaro which was parked in front of the Lumina. Officers followed Celestin into the French Quarter where he entered the Crescent Cabaret and handed the blue box to a bartender, who then placed the box under the bar. This activity was repeated by Celestin on April 22, 25 & 26. Also on April 26, an anonymous woman called the narcotics hot line and said that she had personal knowledge that Celestin was selling marijuana and cocaine to French Quarter dancers from his house located at 4616 Cleveland Street.
Police continued surveillance of Celestin's residence and the next day saw Mark McClellan enter the house for ten minutes, walk to his car, kneel and smoke a hand rolled cigarette. McClellan extinguished the cigarette, placed it under the front floor mat and drove away. Police stopped McClellan and found a marijuana cigarette under the front floor mat. McClellan told police he got the marijuana from Celestin, and the police took McClellan to headquarters for booking.
That evening, under continued surveillance of the Cleveland Street residence, police saw a black Jeep driven by a white male with blond hair arrive. That information was radioed to the detective at headquarters who was booking McClellan. Hearing the radio broadcast, McClellan told the officer the driver of the Jeep was the defendant, Mark Bruser, whom he heard was Celestin's supplier. Police watched the defendant leave the Cleveland Street residence after a short time.
The testimony conflicts as to what happened next. Police witnesses stated that they followed the defendant in an unmarked car, turned on the red and blue lights and the siren and stopped the defendant. Police testified that the defendant voluntarily exited his vehicle and walked toward the police. *154 After the police read the defendant his Miranda rights, and told him he was under investigation for narcotics violation, the police testified that the defendant claimed that he did not have drugs and consented to a search of the vehicle. Several other officers arrived at the scene. A narcotics dog found the cocaine in the Jeep's folded down top, and the police arrested the defendant.
The defendant testified that three or four police cars surrounded his Jeep, forcing him to stop and that an officer approached the Jeep with his gun drawn. The defendant stated that he stopped and exited the vehicle. The defendant did not claim that the police forced him from the car. He denied that he consented to the search, and he testified that the police rather than the dog found the cocaine after 20 or 30 minutes.
The defendant was charged with possession of more than 28 grams but less than 200 grams of cocaine under La.R.S. 40:967.

INVESTIGATORY STOP
The initial inquiry is whether the stop and detention of the defendant was an investigatory stop under La.C.Cr.P. art. 215.1 or an arrest under La.C.Cr.P. art. 201. The state asserts it was an investigatory stop justified by reasonable suspicion based on information from the two informants. The defendant argues that the officers arrested the defendant without probable cause.
Under La.C.Cr.P. art. 215.1, a police officer may stop a person in a public place whom the officer:
reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
An arrest occurs when there is an actual restraint of the person. La. C.Cr.P. art. 201. Circumstances must indicate an intent by police to effect an extended restraint on the liberty of the accused. State v. Simms, 571 So.2d 145, 148 (La.1990).
Louisiana courts have found an arrest where officers stopped a vehicle, drew their weapons, ordered the defendant from the car and had the defendant place his hands on the vehicle. State v. Raheem, 464 So.2d 293 (La.1985); State v. Francise, 597 So.2d 28 (La.App. 1 Cir.), writ denied 604 So.2d 970 (La.1992). The present case is distinguishable because the police did not order the defendant from the Jeep, frisk for weapons, handcuff, or place the defendant in a police vehicle, and the defendant was not informed that he was under arrest until after the cocaine was found. The facts do not establish that the officers intended to exercise extended restraint on the defendant's liberty.
The police officer had reasonable suspicion that the defendant was engaged in criminal activity in order to make an investigatory stop. "Reasonable suspicion" is something less than the probable cause required for an arrest. State v. Vance, 93-1389 (La.App. 4th Cir. 2/25/94) 633 So.2d 819. The defendant was named by two independent informants as the wholesale drug supplier to Donald Celestin whom the officers believed, through the informants' information independently corroborated by police surveillance, was selling the drugs to several establishments in the French Quarter. The officers had stopped Mark McClellan, who was seen going into Celestin's house, and then was seen smoking and disposing in his vehicle what later was found to be marijuana within a very short period of time before the defendant was seen visiting Celestin's residence. The identified informant, Mark McClellan, confirmed information from the first confidential informant that the defendant Mark Bruser was the drug supplier for Celestin. McClellan also related that if the male had blond hair and was driving a black Jeep, the subject probably was Mark Bruser. Based on the totality of circumstances of the two informants' independent information, the female's anonymous tip, and police corroboration of drug activity in the present case, the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. See State v. Matthews, 94-2112 (La.App. 4th Cir. 4/26/95), 654 So.2d 868; State v. Hall, 94-2051 (La.App. 4th Cir. 3/16/95), 652 So.2d 1086. The officer had a reasonable belief that the defendant was engaged in criminal activity so as to justify a brief investigatory stop. Because the detection by the narcotics dog does not constitute *155 a search [see State v. Rose, 607 So.2d 974 (La.App. 4th Cir.1992), writ denied, 612 So.2d 97 (La.1993), and State v. Philippoff, 588 So.2d 778 (La.App. 4th Cir.1991)], the officers had probable cause to arrest the defendant and seize the cocaine after the dog "alerted" on the two bags of cocaine found in the folds of the vinyl top of the Jeep. Also, according to Officer Glasser's testimony, the defendant consented to the search of the Jeep.
Nothing in the record indicates that the trial court made a credibility determination in defendant's favor. At the conclusion of the motion to suppress hearing, the trial court requested memoranda on the legal issue of the expectation of privacy of a vehicle and the case law involving automobile searches.
Automobiles are accorded less protection against warrantless searches due to their inherent mobility and a citizen's lesser expectation of privacy. State v. Harmon, 594 So.2d 1054 (La.App. 3 Cir.1992), writ denied, 609 So.2d 222 (La.1992), & writ denied, State ex rel. Harmon v. Lyons, 623 So.2d 1326 (La.1993). There is no expectation of privacy on the outside of a vehicle. In New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), on remand, People v. Class, 67 N.Y.2d 431, 494 N.E.2d 444, 503 N.Y.S.2d 313 (N.Y.1986), the fact that papers on the dashboard of the defendant's automobile obstructed the vehicle identification number (VIN) from plain view of a police officer who stopped the defendant for traffic offenses, did not create a reasonable expectation of privacy in the VIN, which normally can be seen through the windshield. The officer's reaching into the vehicle to remove the papers was a reasonable search, and a gun that was observed protruding underneath the driver's seat was properly seized, notwithstanding that the defendant had voluntarily exited the vehicle. The United States Supreme Court stated:
[I]t is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile. The VIN's mandated visibility makes it more similar to the exterior of the car than the trunk or glove compartment. The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a `search'....
* * * * * *
... We have recently emphasized that efforts to restrict access to an area do not generate a reasonable expectation of privacy where none would otherwise exist.

New York v. Class, id. [475 U.S. at 114], 106 S.Ct. at 966. [Emphasis added.]
In State v. Taylor, 623 So.2d 952, 953 (La.App. 4th Cir.1993), the deputy found a sock containing contraband when he shined his flashlight on the front "grill of the truck, an area where there is no expectation of privacy." The defendant had been stopped for traffic violations, but the police had no information that the defendant was in possession of contraband. Although it was not immediately apparent that the sock contained contraband, the search was proper where the defendant had no expectation of privacy in the area where it was found.
In the present case the two plastic bags (described as ziplock baggies) containing cocaine were found on the exterior part of the Jeep in the folded-back vinyl top where there was no expectation of privacy just as there was no expectation of privacy in the grill of the truck (Taylor, id.) or on the front windshield which was obscured by papers on the dashboard (New York v. Class, supra.) Whether or not the narcotics dog alerted on the cocaine or the officers recovered the contraband without the aid of the canine, in the present case the defendant had no expectation of privacy on the exterior area of his vehicle, and thus to examine that area did not constitute a "search".
The seizure of the cocaine was justified. The ruling of the trial court is reversed. Defendant's motion to suppress is denied, and the case is remanded to the trial court.
WRIT GRANTED; REVERSED & REMANDED.
LANDRIEU, J., concurs in result.
BARRY, J., dissents with reasons.
*156 LANDRIEU, J., concurring in result.
I agree with the result but not with the majority's "expectation of privacy" analysis. The vinyl top of a Jeep is not analogous to an obstructed "vehicle identification number (VIN) which can normally be seen through the windshield." In this case, however, the arresting officer testified that the defendant consented to the search and nothing in the record indicates that the trial judge questioned the officer's credibility. Accordingly, the defendant's limited expectation of privacy in the vinyl top was not breached, nor was the cocaine seized in violation of his constitutional rights.
BARRY, J., dissenting with reasons.[1]
The trial judge did not err as a matter of law, nor was he clearly wrong on factual determinations.
The defendant was charged with possession of more than 28 grams but less than 200 grams of cocaine. La.R.S. 40:967. The trial court granted a pre-trial motion to suppress evidence (two bags of cocaine) obtained from the defendant's Jeep pursuant to a police stop of the defendant. The state seeks review of that ruling.

Facts
The police received a tip from an unidentified and untested informant that Donald Celestin was selling drugs nightly at two establishments in the French Quarter. The informant said that Celestin drives a late model Lumina and stores cash in his residence at 4616 Cleveland Street, and that Mark Bruser (defendant), a white male with blond hair, is Celestin's supplier. The record does not show that the informant had personal knowledge of that information.
Surveillance of the Cleveland Street residence corroborated that a 1990 Lumina in front of the residence belonged to Celestin, and Celestin was seen taking a box to one of the French Quarter establishments on April 22, 25 and 26, 1994.
On April 26, an anonymous informant reported to the narcotics hotline that she had personal knowledge that Celestin was selling drugs to French Quarter establishments from his house at 4616 Cleveland Street. That informant did not mention defendant.
Police continued surveillance of Celestin's residence and saw Mark McClellan enter the house for ten minutes, walk to his car, kneel and smoke a hand rolled cigarette. McClellan extinguished the cigarette, placed it under the front floor mat and drove away. Police stopped McClellan and found a marijuana cigarette under the front floor mat. McClellan told police he got the marijuana from Celestin, and the police took him to headquarters for booking.
That evening, under continued surveillance of the Cleveland Street residence, police saw a black Jeep driven by a white male with blond hair arrive. That information was radioed to the detective at headquarters who was booking McClellan. McClellan heard the information and told the officer the driver of the Jeep was the defendant, whom he heard was Celestin's supplier. Police watched defendant leave the Cleveland Street residence after a short time.
The testimony conflicts as to what happened next. Police witnesses stated that they followed defendant in an unmarked car, turned on the red and blue lights and the siren and stopped the defendant. Police testified that defendant voluntarily exited his vehicle and walked toward police. Police read the defendant his Miranda rights and told him he was under investigation for narcotics violation. Police testified that the defendant claimed he did not have drugs and consented to a search of the vehicle. Several other officers arrived at the scene. A narcotics dog found the cocaine in the Jeep's folded down top, and the police arrested the defendant.
Defendant testified that three or four police cars surrounded his Jeep forcing him to stop and that an officer approached the Jeep with his gun drawn. Defendant did not claim that the police forced him from the car. He denied that he consented to the search and he testified that police (not the dog) found the cocaine after 20 or 30 minutes.

*157 Investigatory Stop

The initial inquiry is whether the stop and detention of the defendant was an investigatory stop under La.C.Cr.P. art. 215.1 or an arrest under La.C.Cr.P. art. 201. The state asserts it was an investigatory stop justified by reasonable suspicion based on information from the two informants. The defendant argues that the officers arrested the defendant without probable cause.
Under La.C.Cr.P. art. 215.1, a police officer may stop a person in a public place whom the officer
reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
An arrest occurs when there is an actual restraint of the person. La.C.Cr.P. art. 201. Circumstances must indicate an intent by police to effect an extended restraint on the liberty of the accused. State v. Simms, 571 So.2d 145, 148 (La.1990).
Louisiana courts have found an arrest where officers stopped a vehicle, drew their weapons, ordered the defendant from the car and had the defendant place his hands on the vehicle. State v. Raheem, 464 So.2d 293 (La.1985); State v. Francise, 597 So.2d 28 (La.App. 1st Cir.), writ den. 604 So.2d 970 (La.1992). See also State v. Kinnemann, 337 So.2d 441 (La.1976), which found an arrest where officers activated their blue lights and siren to stop the defendant's vehicle, ordered the defendant from the car and restrained him until contraband was found. The instant case is distinguishable because the police did not order the defendant from the Jeep and did not order him to place his hands against the vehicle. The testimony shows that the defendant freely walked around the vehicle and spoke with police.
In State v. Williams, 572 So.2d 756 (La. App. 4th Cir.1990), writ den. 576 So.2d 30 (La.1991), this Court held that there was an investigatory stop when officers blocked the path of a van occupied by the defendant and an officer with a gun drawn ordered the defendant from the van. The Court did not discuss the possibility of an arrest. Because the circumstances leading up to the encounter did not constitute reasonable cause for an investigatory stop, this Court suppressed the evidence.[2] In State v. Wade, 390 So.2d 1309 (La.1980), cert. den., 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (La.1981), the court held there was an investigatory stop where officers raced their vehicle adjacent to the defendant (who was fleeing on foot), stopped their vehicle and jumped into the defendant's path.
In this case, the defendant was not ordered from the vehicle, frisked for weapons, handcuffed, or placed in a police vehicle, and was not informed he was under arrest until after the cocaine was found. The facts do not establish that the officers intended to exercise extended restraint on the defendant's liberty. Therefore, the initial encounter was an investigatory stop rather than an arrest.

Reasonable Suspicion
The state argues that the officers had reasonable suspicion to justify the stop. Reasonable suspicion is something less than probable cause required for an arrest and this Court must consider the particular facts of this case to determine whether the infringement of the suspect's rights was justified. The detaining officer must have knowledge of specific articulable facts which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Vance, 93-1389 (La.App. 4th Cir. 2/25/94); 633 So.2d 819, 820.
An unidentified and untested informant told police that the defendant was the wholesale supplier of marijuana and cocaine to Celestin. Police surveillance corroborated some of the information about Celestin but not defendant. A second tip came from McClellan, who admitted purchasing marijuana from Celestin a short time before the defendant was seen visiting Celestin's residence. Detective William Marks testified that McClellan's tip was based on the "word *158 ... on the street" rather than personal knowledge, and there was no independent corroboration. Although the application for a search warrant of Celestin's residence states that McClellan "has knowledge" of defendant leaving cocaine at Celestin's residence, it does not state the basis of that knowledge. Police saw defendant visit the Celestin residence for a few minutes, but defendant did not engage in any criminal or suspicious activity. He did not exchange money for drugs or carry anything between the Jeep and Celestin's house. Under these circumstances, the officers did not have reasonable suspicion of criminal activity and the investigatory stop was not justified under La.C.Cr.P. art. 215.1. Compare State v. Carey, 609 So.2d 897 (La.App. 4th Cir.1992), which suppressed evidence because information from the confidential informant was not based on personal knowledge and was uncorroborated.
The evidence was properly suppressed.
NOTES
[1] Judge Barry wrote the original proposal on this application which is now his dissent.
[2] This writer dissented in Williams and concluded that under the totality of the circumstances the officers had reasonable cause for the stop.