|,ARMSTRONG, Judge.
We grant the defendant-relator Anthony A. Birtha’s application for supervisory writs to review the trial court’s denial of his claim for post-conviction relief. The relator was charged by bill of information with being a convicted felon in possession of a firearm. He was found guilty as charged. This court affirmed his conviction and sentence in an unpublished opinion. State v. Birtha, 93-2036 (La.App. 4th Cir. 7/14/94), 641 So.2d 6, writ denied, 94-2113 (La. 2/3/95), 649 So.2d 401. In that appeal, the relator argued that he had been deprived of effective assistance of counsel. Specifically, he argued that counsel was deficient in failing to file a motion to suppress evidence, to file pretrial discovery motions, to object to inadmissible evidence at trial, and to present defense evidence. This court stated:
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-eonviction relief to be filed in the trial court where a full evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Sparrow, 612 So.2d 191 *515 (La.App. 4th Cir.1992). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issue on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Sparrow, supra.
The merits of defendant’s claim of ineffective assistance of counsel cannot be fully determined from the present record because his claim concerns trial strategy. Defense counsel even admits that an evi-dentiary hearing is needed as to some of the issues. Hence, the better course would be for defendant to assert his claim in an application for post-conviction relief so that the necessary evidentiary hearing can be held.
RThe relator did file an application in the trial court for post-conviction relief, and after a hearing, the trial court denied relief. He now seeks this court’s supervisory jurisdiction to review that ruling.
The relator’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The relator must show that counsel’s performance was deficient and that the deficiency prejudiced the relator. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the relator if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the relator “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, supra at 694, 104 S.Ct. at 2068. The relator must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
The majority of relator’s application is committed to his argument that counsel was deficient in failing to file a motion to suppress. The transcript of the preliminary hearing establishes that Officer Randy Lou-miere testified he and his partner were driving north bound in the St. Bernard Housing Project, when they observed a four door red Nissan driving through the St. Bernard Housing Project, south bound on Gibson Street. The driver was “driving kind of fast. There was a lot of kids out.” The officers made a U turn. Two people in the back seat “kept looking back and appeared to be nervous.” The officers turned on their emergency lights and attempted to pull the car over. The driver turned into a driveway. The officers pulled in behind him. The right rear door “flew open,” and the relator ran out of the car and up a stairwell. Officer Loumiere gave chase. He saw the relator put a handgun between the screen door and the solid wooden door of an apartment. Officer Loumiere placed the defendant under arrest for being a convicted felon in possession of a firearm because the defendant was on parole |gfor armed robbery. On cross, he said the driver was cited for reckless driving and for not having a driver’s license.
A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited patdown frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B). “Reasonable suspicion” is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Matthews, 94-2112 (La.App. 4th Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4th Cir. 2/25/94), 633 So.2d 819.
The crucial issue in the present ease is whether the officers “stopped” the relator before he discarded the gun because if prop *516 erty is abandoned without any prior unlawful intrusion into a citizen’s right to be free from governmental interference then such property may be lawfully seized. State v. Britton, 93-1990 (La. 1/27/94), 633 So.2d 1208. In such cases, there is no expectation of privacy and, thus, no violation of a person’s custodial rights. State v. Andrishok, 434 So.2d 389 (La.1983).
In California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the United States Supreme Court sought to identify the point at which an individual is “seized” during a poliee/suspect encounter, thereby triggering the protections of the Fourth Amendment to the United States Constitution. The Court held that an individual is not seized until he either submits to the police show of authority or is physically contacted by the police. The Louisiana Supreme Court, in State v. Tucker, 626 So.2d 707, 712 (La.1993), on rehearing, 626 So.2d 720 (La.1993), adopted the definition of an “actual stop” of a citizen as defined in Ho-dari D. However, recognizing that Article 1, Section 5, of the Louisiana Constitution provides greater protections than those provided by the Fourth Amendment of the U.S. Constitution, the Louisiana Supreme Court went beyond Hodari D., by holding that our constitution also protects individuals from “imminent actual stops.” In Tucker, the Court recognized the necessity for Ldetermining what constitutes an “imminent actual stop” for those situations wherein the police attempt to seize an individual but the individual neither submits to the police show of authority nor is physically contacted by the police. The Court listed the following factors for use in assessing the extent of police force employed and determining whether or not that force was virtually certain to result in an “actual stop” of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved m the encounter. Tucker, 626 So.2d at 712-713.
In State v. Collins, 93-1198 (La.App. 1 Cir. 5/20/94), 637 So.2d 741, police officers seized evidence after the defendant began running from approaching officers. The court found that the officers had a reasonable suspicion of criminal activity when they approached the defendant, but the court went on to hold:
Utilizing the factors listed in Tucker, we find that defendant’s “actual stop” was not imminent at the time he abandoned the evidence. Officer Brown was fifteen feet away during his observation of defendant and did not approach defendant with his weapon drawn. Also, both defendant and the officer were on foot, and the encounter occurred in broad daylight with no one else around, when Officer Brown was the only officer in the area. Under these circumstances, we find that defendant was not in imminent danger of being “actually stopped” by Officer Brown. Therefore, even if Officer Brown initially lacked reasonable suspicion for a stop of defendant, once defendant abandoned the matchbox containing cocaine, reasonable suspicion for the stop of defendant and seizure of the matchbox certainly existed.
Collins, 93-1198, pg. 5, 637 So.2d at 744.
In Britton, police officers observed several men kneeling and apparently shooting dice in front of a gasoline station. The men saw the marked police car and “sprang to their feet.” The defendant walked “hastily” into the station with the officers in pursuit, only several feet behind. The defendant removed an object from his pants pocket and placed it on a display rack. This court found that seizure of the object was impermissible as the defendant was “seized” under the Louisiana Constitution. The Louisiana Supreme Court granted writs and reversed this court, finding that the police in this case “did not forcibly detain him [the defendant], or make 15a show of their authority signalling that some form of detention was imminent, until after he discarded the packet of cocaine.” Britton, 633 So.2d at 1209.
In this case, the officers stopped the driver of the car for speeding. There was no *517 indication that a detention of the relator, who was a passenger, was imminent. The relator sprang from the ear before the officers had even exited their own car. Officer Loumiere followed the relator on foot. There was no evidence that he ordered the relator to stop, and no evidence that he drew his gun. Under these facts, it does not appear that the officer forcibly detained the relator or made a show of his authority signalling that some form of detention was imminent, until after the relator discarded the gun. Once the relator abandoned the gun, reasonable suspicion for the stop of the relator and seizure of the gun existed. Therefore, the relator has not shown that his counsel was deficient in failing to file a motion to suppress or that he was in any way prejudiced.
The relator also complains that trial counsel should have filed discovery motions that would have produced the documentation of the predicate offense. However the bill of information charging the relator with being a convicted felon in possession of a firearm would necessarily have informed the relator that it was a felony conviction, although he did have more than one. Nevertheless, as previously considered in our decision affirming the relator’s conviction and sentence, the State established as a predicate offense the relator’s prior conviction for armed robbery. The necessary documentation was produced at trial to establish that predicate conviction. We see no prejudice resulting from the failure of defense counsel to file discovery motions requesting production of that documentation. It would have made no difference in the relator having been found to be a habitual offender.
The relator complains that trial counsel failed to present evidence, namely testimony of a witness, Odessa Johnson. However, trial counsel testified that Johnson was in fact present at the trial, and that she chose not to call her. The defendant testified at the hearing that his attorney told him that Johnson’s evidence was not strong.
The relator also argues that the prosecution should have been ordered to produce its file, which it alleged was missing. At the hearing the assistant district attorney testified that he had forgotten to bring the file to the hearing. The trial court ordered him to produce it. As of June R1995 the State maintained that it was unable to locate the file but would continue to search for it. The relator should exhaust his remedies to obtain this file at the trial court level. We reserve to relator all rights to raise issues related to the file at a later date.
For the foregoing reasons, we affirm the judgment of the trial court insofar as it based its denial of the relator’s claim of ineffective assistance of counsel on the record and hearing, being unable to consider any claims directly related to the prosecution’s file. Relator may raise any such claims at the trial court level once the file is turned over and seek review by this court of any trial court rulings on those claims.

WRIT GRANTED; AFFIRMED.