11JONES, Judge,
dissenting with reasons.
Having reviewed the writ application and the transcript of the hearing on the Motion to Suppress, I would deny the State’s application for supervisory writs.
In its reasons for judgment, the trial court noted it suppressed the evidence seized from the two searches of the defendant because it found the officers had no probable cause to arrest the defendant and that they did not have reasonable suspicion of criminal activity involving the drugs to stop the defendant. The court acknowledged the officers could stop the defendant for the traffic violations, *1070 but it found they did not provide a reasonable belief the defendant was armed to support the frisk which led to the finding of the drug paraphernalia. In its application, the State does not address any of these findings; rather, it argues the seizure of both the drug paraphernalia and the LSD was valid as searches incident to the defendant’s arrest for the traffic violations.
If indeed the defendant had been properly arrested prior to the searches which produced the LSD and the paraphernalia, then these items would have been properly seized pursuant to the search incident to arrest exception to the warrant requirement. See State v. Wilson, 467 So.2d 503 (La.1985), cert. den., Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Johnson, 94-1170 (La.App. 4th Cir. 8/23/95), 660 So.2d 942, writ den., State v. Johnson, 95-2331 (La.2/2/96), 666 So.2d 1092, and State v. Dibartolo, 95-3044 (La.2/2/96), 666 So.2d 1105. Although both officers testified the defendant was not arrested until after the LSD was found during the second search, the State now argues the defendant was under arrest when the officer stopped him and “effected an extended restraint” on his liberty. As noted by this court in State v. Bruser, 95-0907 pp. 3-4 (La.App. 4th Cir. 9/15/95), 661 So.2d 152, 154: “An arrest occurs when there is an actual restraint of the person. La.C.Cr.P. art. 201. Circumstances must indicate an intent by the police to effect an extended restraint on the liberty of the accused. State v. Simms, 571 So.2d 145,148 (La.1990).” In Bruser, this court found the defendant had not been arrested because although he had been stopped, the officers did not order him from his car or physically restrain him. Here, the first officer stopped the defendant and ordered him to exit his ear, but the officer stated he asked the defendant to exit and give him his “license and information and all to verify that this was the vehicle.” The officer stated he also did a patdown search for his safety, noting he generally did not conduct such searches for routine traffic stops, “but a traffic stop where it’s more involved than just traffic I do a pat down.” Thus, it appears that at the time of at least the first patdown search which revealed the paraphernalia, the defendant was not under arrest.
The State argues, however, that the officers had probable cause at that point to arrest the defendant for the traffic offenses. In support, it cites La.C.Cr.P. art. 213, which concerns the warrantless arrest of a defendant where there is probable cause to believe he has committed an offense. La.C.Cr.P. art. 211 permits an officer to issue a summons rather than arrest a defendant for a misdemeanor if: (1) the officer reasonably believes the person will appear; (2) the officer reasonably believes the person will not cause injury or damage tojjhimself or others and that he will not “continue in the same or similar offense unless immediately arrested and booked”; (3) it is not necessary to book the person for identification purposes; and (4) the person has no prior criminal convictions. However, a statute more specific to traffic violations, La.R.S. 32:391, contained in the Highway Regulatory Act, provides in part:
A. Whenever any person is arrested for a violation of any provision of this Chapter or any regulation of the department or of the secretary of the Department of Public Safety adopted pursuant thereto, except as otherwise provided in this Section, the arresting officer shall take his name, address, the license number of his motor vehicle, and the number of his operator’s license, and shall issue a summons or otherwise notify him in writing to appear at the time and place to be specified in such summons and notice.... Except as otherwise provided in this Section, the person arrested shall have the option of remaining in custody pending his furnishing bail as fixed by a magistrate, or depositing his operator’s license with the arresting officer, as provided in R.S. 32:411.
As per paragraph C, this provision does not apply to any person charged with any offense involving an accident resulting in injury or death, to any person charged with driving while under the influence, or “to any person whom the arresting officer has good cause to believe has committed any felony or misdemeanor, and in any of these cases the arrest *1071 ing officer shall immediately take the person arrested before the nearest or most accessible magistrate having jurisdiction.” Cases interpreting this statute have held that there must be something more than a mere violation of the traffic ordinance in order to support an arrest. In State v. Daniels, 614 So.2d 97 (La.App. 2nd Cir.), writ den., 619 So.2d 573 (La.1993), the officer observed an inspection sticker on the defendant’s car which had been removed and reattached and which was marked “void”. When the officer attempted to look inside the car at the back of the sticker, the defendant became abusive and attempted to block the officer’s way. The officer then placed the defendant under arrest, and a ^subsequent search of his ear produced drugs. On appeal, the court noted that the arrest was justified under either La.C.Cr.P. art. 211 or La.R.S. 32:391 C because the issuance of a summons would cause the defendant to continue to violate the traffic laws by driving his ear with the invalid sticker and because the defendant’s actions gave the officer good cause to believe defendant committed another crime.
Here, the traffic offenses for which the defendant was stopped and with which he was charged were La.R.S. 32:104 (turning movements and required signals) and La.R.S. 32:295.1 (safety belt use), neither of which by themselves would permit the officers to arrest the defendant. Indeed, La.R.S. 32:295.1 F provides: “No vehicle, the contents of the vehicle, driver, or passenger in a vehicle shall be inspected, detained, or searched solely because of a violation of this Section.” Thus, the officers could not arrest the defendant for the traffic violations by themselves.
Paragraph C of La.R.S. 32:391 speaks of the arrest of a defendant for traffic violations where the officers have “good cause” to believe the defendant has committed a misdemeanor or felony. In a footnote in Gardner, the court equated “good cause” with “probable cause” to believe the offender has committed a misdemeanor or felony. Gardner, 476 So.2d at 941, fn. 1. In addition, La.R.S. 32:411 C(4), under the Driver’s License Law, which concerns the posting of a driver’s license in lieu of security for traffic violations, provides that such posting is not permitted “when the arresting officer has probable cause to believe that the person charged has committed an offense as defined in Title 14 of the Louisiana Revised Statutes of 1950. The arresting officer shall take these persons forthwith before the nearest or most accessible magistrate having jurisdiction.” Therefore, if the officers here had probable cause to believe the defendant was in possession of drugs, they could |shave validly arrested him for the traffic violations.
However, the trial court found there was no probable cause prior to the initial search of the defendant to believe he possessed drugs. “Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime.” State v. Wilson, supra, 467 So.2d at 515. See also State v. Johnson, supra. Here, although the officers had been given information concerning drug sales by the defendant a few months prior to the arrest, they were unable to corroborate this information. The tip given the day of the arrest mentioned the defendant would be driving to New Orleans to pick up some drugs. However, as noted by the trial court, there was no indication of how the informant knew of this. In addition, the only facts which “corroborated” the tip were that the defendant drove to the French Quarter, stayed a short while, and then drove back toward Plaque-mines Parish. Although this activity would have been consistent with the tip, it also would have been consistent with entirely innocent activity, especially given the officers’ inability to connect the defendant with any prior criminal activity. As such, the officers did not have probable cause to support an arrest for drug possession based only upon the tip and the defendant’s travelling to New Orleans.
Based upon these facts, however, the officers had reasonable suspicion to stop the defendant. In State v. Sneed, 95-2326, p. 3 (La.App. 4th Cir. 9/11/96), 680 So.2d 1237, 1238, writ den., 96-2450 (La.3/7/97), 689 So.2d 1371, this court described the standard to support an investigatory stop:
*1072 An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person “is committing, has committed, or is about to commit an offense.” La.Code Crim.Proc.Ann. art. 215.1. While “reasonable suspicion” is something less Uthan the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir. 1/19/95), 649 So.2d 1078, 1082. The officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App.2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
See also State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713; State v. Williams, 95-1971 (La.App. 4th Cir. 11/16/95), 665 So.2d 112.
In addition, once reasonable suspicion is found, paragraph B of art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may fiisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
See also State v. Hunter, 375 So.2d 99 (La. 1979). “The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger.” State v. Smith, 94-1502 p. 5 (La.App. 4th Cir. 1/19/95), 649 So.2d 1078, 1082. As noted by this court in State v. Denis, 96-0956, pp. 7-8. (La.App. 4th Cir. 3/19/97), 691 So.2d 1295, 1299:
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen’s right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature’s attempt to maintain that balance by allowing the officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he “reasonably suspect that he is in danger.”
A police officer’s duty to enforce and uphold the laws includes not only those statutes that define and ^prohibit criminal conduct, but also those which define and limit the government’s intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
In this case, rather than offering evidence that would support the officers’ belief that they were in danger, Officer Hunt’s testimony establishes that “there was no time that [he] believed [Mr. Denis] was armed.” Therefore, because the State failed to establish justification for the frisk, the trial court erred in denying the motion to suppress the evidence discovered through that action, (emphasis supplied)
Here, the officer who conducted the first patdown search testified he searched the defendant for his safety. He testified he did not routinely search persons stopped for traffic violations, “but a traffic stop where it’s more involved than just traffic I do a pat down.” However, other than the statement that he conducted the search “for safety”, the officer did not specify why he thought the defendant might be armed. The trial court apparently did not believe this was enough of a showing to cause the officer to believe the defendant was armed. I cannot say the trial court erred when it found the first patdown search was unjustified.
However, assuming arguendo that the officer was justified in conducting the patdown, the subsequent seizure of the wooden box *1073 exceeded the scope of a patdown search because the officer admitted he did not know what it was prior to it being removed from the defendant’s pocket. As noted by this court in Denis, pp. 8-9, 691 So.2d at 1300:
[E]vidence discovered during a lawful investigatory frisk may be seized under the “plain feel” exception to lathe warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the “plain view” doctrine requires that an object’s incriminating character be immediately obvious when seen, the “plain feel” doctrine requires the tactile discovery of “an object whose contour or mass makes its identity immediately apparent.” Dickerson at 375, 113 S.Ct. at 2137, 124 L.Ed.2d at 345. Thus, in State v. Parker, 622 So.2d 791 (La.App. 4th Cir.), writ denied, 627 So.2d 660 (1993), the seizure of a matchbox containing cocaine detected during a pat-down search was found not to fall within the “plain feel” exception because there was no evidence that a matchbox’s shape was identifiable as contraband. In contrast, in State v. Stevens, 95-501 (La. App. 5th Cir. 3/26/96), 672 So.2d 986, the seizure of drugs in a matchbox detected during a lawful pat-down was upheld because the officer testified that her prior experience indicated that most street-level crack dealers carried their drugs in a matchbox. Similarly, where testimony establishes that an object detected during a pat-down was immediately identifiable as a “crack pipe,” suppression of the cocaine residue contained within the pipe is not required. State v. Lavigne, 95-0204 at p. 9, 675 So.2d at 778; State v. Livings, 95-251, pp. 5-6 (La.App. 3d Cir. 11/15/95), 664 So.2d 729, 733, writ denied, 95-2906 (La.2/28/96), 668 So.2d 367.
Here, the officer admitted he did not know what the object in the defendant’s pocket was until after it was removed from the pocket. Contrary to the suggestion of the majority in footnote 2, there is nothing in the record before this Court to support a finding that this box, which was the size of a large kitchen match box, was big enough to contain a weapon. As such, the seizure cannot be upheld under the “plain feel” exception. Because it also exceeded the scope of a patdown search, the seizure was unlawful, and the trial court did not err by suppressing the wooden box.
The LSD was found during a second search of the defendant. There was no reason for a second patdown search for weapons because the earlier patdown produced no weapons. Indeed, the officer who conducted the second search admitted that he conducted the search “[t]o check for contraband, LSD is very |9small and can be hidden just about anywhere and it could be hidden into the material of any clothing, even into the zipper, they make zippers in the trousers of pants, in the trousers into the zipper area where they can slide it in there and it will go undetected on a normal patdown.” The officer admitted he seized the LSD from the “coin pouch area of his jeans”, an area where no weapon could have fit. Thus, this search was not a patdown for weapons, but rather a search for drugs.
This type of search would only be lawful as a search incident to arrest. As noted above, the circumstances of the case prior to the stop do not support a finding of probable cause to believe the defendant was in possession of drugs. The other officers’ finding the drug paraphernalia might have given the officers more reason to suspect he was carrying drugs (although the drug paraphernalia was associated with marijuana, a different drug than the LSD the defendant was suspected of having gotten in the Quarter). However, this paraphernalia was discovered during an unlawful search, and it cannot be used to bolster the subsequent search which led to the discovery of the LSD. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because none of the exceptions to Wong Sun[1] are applicable in this ease, the pertinent facts to determine probable cause are those which were present *1074 prior to the stop and initial patdown. These facts do not support a finding of probable cause. As such, there was no probable cause to arrest the defendant at that time; thus, the search which produced the LSD cannot be upheld as a search incident to arrest. Therefore, the trial court also correctly suppressed this evidence.
As noted by this Court in State v. Scull, 93-2360, p. 9 (La.App. 4th Cir. 6/30/94), 639 So.2d 1239, 1245 writ den., 94-2058 (La.11/11/94), 644 So.2d 391: “The trial court is vested with great discretion when ruling on motion to suppress.” See also State v. Mitchell, 95-2454 (La.App. 4th Cir. 7/31/96), 679 So.2d 178. Because the trial court did not err by suppressing the evidence seized from both searches of the defendant, I would deny the writ application.

. The three exceptions are: the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. See also State v. Welch, 449 So.2d 468 (La.1984); State v. Irby, 93-2220 (La.App. 4th Cir. 2/4/94), 632 So.2d 801, writ den. 94-0580 (La.4/29/94), 637 So.2d 461.